### Richmond.

## MOON'S ADM'R v. R. AND A. R. R. COMPANY.

April 24th, 1884.

1. RAILROAD COMPANIES.—*Negligence of agents—Onus probandi.*—Where it is the province of the conductor to control the placing and assigning to duty of the train men, and the coupling and make up of the train, and the train is not made up in the usual and proper manner, the conductor is not a fellow-servant, but the superior of the train men, and an accident results, whereby one of said train men is injured, the burden of proving affirmatively that the accident did not result from the negligence of the company or of any agent for whose conduct it is responsible, rests on the company.

2. IDEM—*Co-employees—When company not liable.*—The fellow-servant or co-employee for whose negligence the company *is not liable*, is one employed in the same shop or place with, and having no authority over the one injured, and who is no more charged with the discretionary exercise of powers and duties resting on the company than is the one injured.

3. IDEM—*No such co-employees—When company liable.*—But where the company delegates to an agent duties made encumbent on it by the law, his acts and negligences are those of the company, and such agent is not a fellow-servant with those under him, or with those in a different department of its service, and it is liable for an injury done by such agent's acts or negligences to an employee of either of the two classes aforesaid.

4. PRACTICE AT COMMON LAW—*Instructions.*—Instructions founded on evidence in the case and consistent with the law, are proper and should be given; but otherwise, where they have no basis in the evidence. And where the acts and negligences of the defendant company's agents is *the issue*, an instruction bearing on such acts and negligences, should mention "agents" as well as "company," to avoid danger of misleading the jury.

5. IDEM—*Idem—Contract of employee.*—An instruction which assumes that the employee "takes all risks," is erroneous. Employee's contract is based on implied undertaking of company to provide safe machinery, and competent agents, and to have its roadway and structures in safe condition when he is required to go over them.

6. RAILROAD COMPANIES—*Injury by negligence to employee.—Case at bar.* The facts and proceedings disclosed by the record, show that the verdict was contrary to the law and the evidence, and that a new trial should have been awarded.

Error to judgment of circuit court of city of Richmond, rendered 21st December, 1881, in action of trespass on the case wherein E. B. Spencer, administrator of George Moon, deceased, is plaintiff, and the Richmond and Alleghany Railroad Company, defendant. The object of the action, which was instituted under Code 1873, ch. 145, § 7, is to recover damages, not exceeding $10,000, for the killing of said George Moon, by the wrongful act, neglect, and default of the defendant. Verdict and judgment for the defendant.

The opinion fully states the facts.

*R. T. Hubard,* for the appellant.

*Johnston, Williams & Boulware,* and *Carrington & Fitzhugh* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of the city of Richmond, rendered on the 21st December, 1881, in a suit in which E. B. Spencer, administrator of George Moon, deceased, is plaintiff, and the Richmond and Alleghany Railroad Company is defendant.

The action is for recovery of damages from the defendant company of $10,000 for the killing of the plaintiff's intestate, George Moon, by the negligence of the said company, and through no contributory negligence of the said

decedent, who was an employee of the said company, and who, as such, was faithfully performing his duty at the time of the accident which caused his death.   It appears from the record in the case that the Richmond and Alleghany Railroad Company was incorporated by act of the general assembly of Virginia, and acquired control of all the property, rights and franchises of the James river and Kanawha Company, upon the terms and conditions (among others) that the said company would construct and equip a railroad from Richmond, up the valley of the James river, to Clifton Forge within twenty months, which shall be a first-class railroad, with steel rails, . . . and equipped with ample accommodation, &c., &c.   They were required to deposit $500,000 as security, of which $50,000 might be withdrawn for each successive twenty-five miles which should be, in the estimation of the board of public works, "fully completed."   Acts 1878–9, ch. 139, §§ 1 and 4.   The company reported as "fully completed" and opened to freight and passenger traffic the line from Richmond to Joshua Falls on the James river—some 125 miles—and had become fully liable to the public for any failure on its part to comply with the above recited conditions, when the aforesaid George Moon entered its service, about the 6th of July, 1881.

On Monday morning, July 25th, 1881, a material train, which, on Saturday next before, had been run up to Joshua Falls, was started down the road, running backwards, with the engine and tender not turned around, but simply detached from the front of the train and coupled at the rear, the pilot of the engine being attached to the rear car, which was the captain's caboose car.

George Moon was one of a party of colored men who had been engaged for this company, in Halifax county, by Captain W. R. Thompson, the conductor on this train, and Moon had been put under his charge and orders, and re-

ceived orders only through him. Moon was an experienced, able bodied railroad hand, in the 23d year of his age, and number one in all respects, and was made one of the rear brakemen by the conductor. This train was in use hauling cross-ties from points of delivery between the Falls of Joshua and Scottsville, and also in hauling dirt for repairing the track from time to time. Various parties of section hands were at work upon the road on the 25th of July, and all signalled the train with flags as it approached them, save one. This party, under the section-master, Herndon, was at work a few miles below Gladstone station, upon a curve in the road, and had the outside rails up, bringing them to a higher level than had existed before, and had what is called a "run out," with one end corresponding in level with the new and raised level above, while the other end had the same level as the old track below. Under this "run out" the dirt had not been filled in and rammed firm, but it had only been tamped—that is, gravel had been thrown under the end of the tie on which the joints of the rail rested at the upper end of the "run out," and also under the ties at other places along the "run out." With the track in this condition, on a curve, the foreman, or section-master, Herndon, deliberately chose to take the chances, and gave no signal to the approaching train. The engineer running the train (who had been experienced as an engineer for thirty years) saw the hands of this working party under the section-master (Herndon) at work on the track half a mile ahead, but seeing no flag signal, thought all was right and put on steam, and when he thought he had passed all the hands standing near the track, "gave her steam again to quicken up, and just after saw the tender jumping and knew it was off the track." He shut off the steam and was, with his engine, carried over the banks, &c. The cars were new, the rails and ties were new, and there was no obstruction on the track; yet

the tender was thrown off and jerked clear around and upset over the embankment, the engine thrown off and turned over into the canal; one caboose car jumped clear over the engine, and another was broken to pieces, and two flats likewise, while a third flat was reared up upon the wreck with its hind wheels resting on the track; George Moon was thrown off to the right, and caught under the wreck and had all the flesh torn off of one leg from the knee to the foot, and his body so bruised and injured that he died after eight hours of intense suffering. The record shows that the deceased (George Moon) was faithfully performing his duty—was guilty of no negligence—and that there was no apparent or imaginable cause for the accident, other than the running of the train over the newly raised and unequally elevated track around a curve, and accelerating the speed just at the place where the track had been disrupted by the working party, then on the spot, who wholly failed to signal or notify the oncoming train, under an old and experienced engineer, who says that he saw the party full half a mile ahead, but seeing no *flag*, therefore concluded that all was right.

Upon this state of facts the plaintiff's attorney moved the court to instruct the jury as follows, viz: I. "If the jury believe from the evidence in this case that Conductor W. R. Thompson had general charge and control of the train men, assigning them to such duties as he thought proper, and general control over the coupling and make-up of his train, and that the accident of July 25th, 1881, was caused by any negligence in the management of making up his train, the company is liable therefor, and they must find for the plaintiff."

We think that this instruction should have been given as asked; and the court erred in refusing to give it. It was certainly encumbent on the defendant company, upon the facts shown by record, to show, affirmatively and posi-

tively, that the accident was not caused by its negligence, or the negligence of any agent for whose conduct the company itself was responsible (*Greenleaf* v. *The Illinois Central Railroad Co.*, 29 Iowa, 14); and the evidence, showing by the defendant's own witnesses, that the train was not made up in the usual and proper way, and that W. R. Thompson, the conductor, was not a fellow-servant of Moon, but his superior, and in a position wherein he exercised discretionary authority, and was charged with certain duties, for the proper performance of which the law holds the company itself responsible, any negligence on his part in this behalf is the negligence of the company itself. *Railroad Company* v. *Foot*, 17 Wall. 553; *Brother* v. *Carter*, 57 Mo. 373; *Patterson* v. *Pittsburg and Connellsville Railroad*, 76 Penn. 389.

And we think the second instruction: "If the jury shall believe from the evidence that the accident was caused by any negligence or want of skill on the part of Herndon, the section foreman, in failing to signal the train, or in failing to have the track in safe condition at the place of the accident, the company is liable, and they must find for the plaintiff," was correct, and ought to have been given by the court. Herndon, the section master, in charge of a squad of hands working, altering and repairing the road, could in no sense be regarded a fellow-servant in the same common employment, or department of service with Moon, who was a train hand and brakeman. *Connolly* v. *Davidson*, 15 Minn. 519. They were not co-employees, thrown together in a common duty, and having opportunity to observe and judge of the habits and qualifications of each other. *Lewis* v. *St. Louis, &c., Railroad Co.*, 59 Mo. 495; *Ryan* v. *Chicago and N. W. Railroad Co.*, 60 Ill. 171. And where a company delegates to an agent or employee the performance of duties which the law makes it encumbent on the company to perform, his acts are the acts of

the company—his negligence is the negligence of the company. *Brothers* v. *Carter*, 52 Mo. 372; *Flike* v. *Boston and Albany Railroad Co.*, 53 N. Y. 549; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Mullan* v. *Philadelphia and Southern S. S. Co.*, 78 Penn. 25; *Ryan* v. *Chicago and N. W. Railroad Co.*, 60 Ill. 171. If corporations could, in such cases, escape liability on the plea that its agent was fellow-servant or co-employee of the party injured, it follows that they could never be held liable at all, since such corporations must need perform their duties always through agents, who have a common employer. *Flike* v. *Boston and Albany Railroad Co.*, 53 N. Y. 549, *supra;* *Hough* v. *Railroad Co.*, 10 Otto, 218–19; Wharton's Law of Negligence, § 232.

The fellow-servant or co-employee for whose negligence the company is not liable, is one who is in the same common employment—that is, in the same shop, or placed with, and having no authority over, the one injured—and who is no more charged with the discretionary exercise of powers and duties imperatively resting on the company than the injured party; but where a person is placed in charge of the " construction or repair of machinery," the " dispatching of trains," the " maintenance of way," &c., he is not a fellow-servant with those under him, nor with those in a different department of the company's service. He is the agent of the company, which has assumed, through him, the performance of duties which are absolute and imperative; the omission or the negligence of performing which the law will in nowise excuse. *Clarke* v. *Holmes*, 7 Hurls. & Nor. 937; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 241; *Hough* v. *Railroad Co.*, 10 Otto, *supra.*

The third instruction asked for by the plaintiff, covering the case of the accident being caused by the insecure condition of the track below where Herndon was at work, and the fourth instruction, whether it was at or below his

work, were proper and relative to the facts in evidence, and should have been given by the court.

The court declined to give the instructions asked for, and, in lieu thereof, gave three instructions of its own, as follows—viz:

First. " The jury are instructed that they should find for the defendant in this cause, unless they believe from the evidence that the death of the plaintiff's intestate was caused by some wrongful act, neglect or default of the defendant corporation."

This instruction is correct as a proposition of law, but following the refusal of the court to give the instructions which had been asked by the counsel for the plaintiff, it should have concluded with the addition of " or its agents."

The second instruction given by the court was : " And the jury are further instructed, that if they believe the accident which caused his death was occasioned by any negligence of Herndon, the section foreman, in failing to signal the train, they cannot impute such negligence in this case to the defendant, and should find for the defendant." This instruction is erroneous, and is against law and reason alike. It assumes that an employee " takes all risks," when in law his contract is based on the implied duty and undertaking of the company to provide safe and adequate machinery, competent and vigilant agents, and to keep its roadway and structures always in good and safe condition, when he is required to go over them. *Chicago and N. W. Railroad Co.* v. *Jackson,* 55 Illinois, 492; *Corcoran* v. *Holbrook,* 59 N. Y. 517 ; *Baxter* v. *Roberts,* 44 Cal. 187 ; *Snow* v. *Housatonic Railroad Co.,* 8 Allen, 441; *Lewis' Adm'r* v. *St. Louis and Iron Mountain Railroad,* 59 Mo. 49; *Patteson* v. *Pittsburg and Connellville Railroad,* 76 Penn. 389; *Drymala* v. *Thompson,* 26 Minnesota, 40; *Moore's Adm'r* v. *R. and D. Railroad,* 8 Va. L. J. 84. As to statutory obligation upon the defendant, R. and A. R. R·

Co., to maintain first-class roadway, see Acts of Assembly, 1878–9, pp. 118–19.

The third instruction given by the court was: "It was the duty of the defendant to maintain its track and road-way in good and safe condition; but if the jury shall believe that the roadway had been constructed in a safe condition for public travel, and that the deceased entered into the service of the company with knowledge that it was a new road, and the jury shall further believe that the accident was occasioned by any condition of the track incident to a new road, which the defendant by the exercise of diligence and care could not have avoided, they should find for the defendant."

The evidence in the case affords no basis for this instruction. Hoskins, the defendant's witness, said accidents cannot always be prevented or foreseen, in the case of a railroad whose bank or embankment is "green" or new; but he, and all the witnesses, stated that this was not the case here. It was an old, settled, tow-path embankment, which had been tramped for forty years, on which no new dirt had been put, but which the tracklayers had only surfaced up a little as they went along. And the instruction is erroneous, also, in that it excludes the liability of the defendant for the unsafe condition of the track made by the alteration of the level of the outside rails by the section-master and his party, and the incomplete condition of this operation, at the moment when he stood by and deliberately failed to give the usual and expected flag-signal to the oncoming train, which, from the testimony of the defendant's own engineer in charge and witness Haffner, would have prevented the accident and consequent death of the plaintiff's intestate, Moon, and two others.

The court erred in overruling the motion for a new trial. Under the instructions given, and the refusal to give the instructions asked by the plaintiff, the jury could not find

otherwise than they did; but the verdict was against both law and evidence, and should have been set aside. The evidence shows that the deceased, George Moon, came to his death while faithfully performing his duty in the service of the Richmond and Alleghany Railroad Company without any contributory negligence on his part, but wholly and solely by the breach of duty and negligence of the said company, which was reckless of decedent's life, in requiring him, without warning, to go at a rapid speed over a part of its roadway which was at the time, and in the knowledge of its agents, unfit and unsafe to be run over by the train.

The judgment of the circuit court of the city of Richmond in this case must be reversed and annulled, and the case remanded for a new trial in said court, in accordance with the views herein expressed.

HINTON, J., concurred in result.

JUDGMENT REVERSED.