# Richmond.

## PAYNE v. GRANT.

### DECEMBER 3d, 1885.

1. PRACTICE AT COMMON LAW — *Declaration — Demurrer.*—Where declaration in suit for damages for breach of contract avers a distinct promise, a valuable consideration therefor, and a breach thereof, it is sufficient.

2. IDEM—*Pleadings—Contract—Evidence—Inducement.*—For purposes of pleading, no difference exists between promises express and promises implied, and same form of description is used for both; and the promise set up may be established by proof direct, or by proof inferred from acts. A third person's contract may be stated as matter of inducement, whilst the promise actually declared on is that of the defendant.

3. IDEM—*New trial—Evidence certified—Case at bar.*—A case to which is applied the rule of this court from *Bennett* v. *Hardaway*, 6 Munf. 125, down to *Taylor's Case*, 77 Va. 692, inclusive, which discard exceptor's oral evidence, and gives full credit to exceptee's.

4. IDEM—*Dismission—Res judicata.*—Dismission of suit *on its merits* at the hearing, whether on plea in bar or demurrer for want of equity or cause of action, is a bar to another suit for the same subject matter between the same parties, *unless the dismission be "without prejudice,"* etc. *Durant* v. *Essex Co.*, 7 Wall. 107.

5. IDEM—*New trial—Instructions.*—Error in giving or refusing to give certain instructions, or in admitting or refusing to admit certain evidence, affords no ground for reversing a judgment, when it is evident that the appellant could not have been injured thereby. *Brighthope Railway Co.* v. *Rogers*, 76 Va. 443 ; *Harman* v. *Lynchburg*, 33 Gratt. 43.

Error to judgment of circuit court of Fluvanna county, rendered 14th April, 1883, in an action of *assumpsit,* wherein Bev-

erly Grant was plaintiff and Joseph S. Payne was defendant. To which judgment said Payne obtained a writ of error and *supersedeas* from one of the judges of this court.

Opinion states the case.

*Pettit & Leake*, for the plaintiff in error.

*T. S. Martin* and *J. S. Parrish*, for the defendant in error.

HINTON. J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Fluvanna county, in an action of *assumpsit* wherein a verdict was rendered in favor of Beverly Grant, the plaintiff below, for the sum of $1,500.

The two first counts of the declaration were special. The first sets out under a "whereas" that the plaintiff had been and was at the time of the agreement in the said count mentioned engaged in exploring lands of various parties for the purpose of discovering gold thereon, and opening and developing the veins so discovered by him with a view to the sale of said lands for gold mining purposes, in which business he had experience; that in the course of his business aforesaid, he made a contract with a certain William A. Allen, and afterwards with his widow, Henrietta Allen, and with his mother, Louisa G. Allen, by which the Allens agreed to permit him to explore their lands in the county of Goochland for gold, agreeing that said permission and right should not be limited as to time, and that he should have a one-third interest in any veins of gold which should be found; that in pursuance of this agreement he discovered a number of valuable veins of gold on said lands, and expended large sums of money in opening and developing the same in the lifetime of

the Allens; that these contracts were recorded in the clerk's office of the county court of said county, all of which was known to the defendant Payne; that after the death of the said William A. Allen and wife the said lands were sold under a decree of the circuit court of Goochland, and purchased by the defendant with full knowledge of the interest of the plaintiff under his contracts with the Allens; that the defendant declared, after his said purchase, that he bought it without reference to its value for the gold on it, and recognizing the mineral rights of the plaintiff therein under his contracts as aforesaid with the Allens; and that afterwards in the year 1875, he, the plaintiff, at the special instance and request of the defendant went upon the said land with the defendant, and in conjunction with him, and at their joint expense, proceeded to examine, open and develop the viens on said land before that time opened and discovered by the plaintiff, with a view to the sale of said land for mining purposes. The count then avers that the defendant then and there recognized the rights of the plaintiff in the gold veins so discovered by him under his contract with the Allens, and "in consideration of the premises and * the further consideration that the * plaintiff would, from his intimate knowledge of the said lands, and the gold veins thereon, and his experience in such matters, give him further aid in developing the veins which he had discovered, and aid and assist him in commending the said veins of gold on said land, so that the defendant might effect the sale of the said land for gold mining purposes at a large price; he, the said defendent, then and there undertook, and faithfully promised the plaintiff, that in case the said land should be sold for a price over and above that the defendant gave for it at the commissioner's sale aforesaid, he would allow him one-third of the sum for which the said land might be sold, deducting therefrom the price paid for it by the defend-

ant at the commissioner's sale, or the fair value thereof for agricultural purposes, without reference to its value as a gold mine." The count then goes on to state that the plaintiff, "confiding in the promises so made by the defendant, afterwards opened a correspondence with various persons in several States, known to him from his long connection with gold mining operations as persons likely to purchase mines; that, as the result of this correspondence, various persons visited him in the town of Columbia, for the purpose of inquiring of him the value of the veins, and of making a personal examination of said land and veins; and the said plantiff avers that, with the full knowledge and consent of the said defendant, he did carry various persons looking after gold property to the said land on various occasions, and did, in company of the said defendant, show the said parties the said veins, and give them and him the benefit of all his knowledge of them from his long connection; and did, in conjunction with the said defendant, and at their joint expense, proceed further to open some of the said veins for the satisfaction of persons proposing to purchase, the said plaintiff then and there stating to the persons making the examination with a view of purchasing, that he, the said plaintiff, was the owner of one-third of the gold rights in said land, in the presence of the said Payne, the defendant;" and that the defendant then and there admitted that such statement was true. The count then avers that the defendant made sale of the said land afterwards, with the mineral and gold rights attached thereto, for the sum of $15,000, by reason of the fact that the plaintiff had discovered, opened and developed to some extent the said veins of gold on said land, and had aided and assisted the defendant in bringing the said lands into the market. The count then avers that by reason of the exertions of the plaintiff, the defendant was enabled to sell the said land for the price aforesaid, and that this price exceeds that paid

by the defendant for said land, or the fair value thereof for agricultural purposes, by the sum of $9,000; and then concludes by assigning as a breach the refusal of the defendant to perform his agreement, to the damage of the plaintiff $2,000. I have thus set out this count almost at full length not only because it indicates the plaintiff's claim, but because it will render unnecessary a lengthy review of the evidence. The second count omits to set out the Allen contracts as an inducement or consideration for the agreement declared on, but in other respects is not essentially different from the first count, and need not, therefore, be more particularly described.

To these counts the defendant filed a demurrer. The grounds of demurrer are not stated, and, upon a careful consideration of the declaration, we are unable to perceive any. As has been said in the brief of counsel, each of these counts aver a distinct promise, a valuable consideration for the promise, and a breach of the promise. The action is founded on the promise, and not on the Allen contracts. The Allen contracts are referred to as an inducement, or, rather as one of the considerations for the promise declared, but apart from the Allen contracts a sufficient consideration for the promise is furnished by the services which the plaintiff afterwards rendered the defendant in aiding and assisting him to develop and sell the property as gold mining property, and this consideration is fully set out in each of these counts. The demurrer was, therefore, properly overruled.

Now, whilst the contract itself must be truly set out in every declaration in *assumpsit*, yet it is well understood that, for purposes of pleading, there is no difference between an express and an implied contract, and that in every case, where the agreement is not in writing, the same identical words of description are employed to describe an implied as well as an express promise; and it follows, therefore, that in this case the promise declared on may be established by proof of a contract, express

or implied—all that is necessary being that the contract proven shall be the contract set out in the declaration. 1 Chitty on Contracts (11th ed.), p. 80; 4 Min. Inst. p. 578.

The next inquiry which logically arises is, whether the contract stated in the declaration is made out by the evidence. There is no certificate of facts proved in the case, for the reason, as the court states, that the evidence was conflicting, and it therefore declined to certify the facts; and as the defendant, recognizing the well-settled rule that where there is a certificate of evidence only this court rejects all of the parol evidence of the exceptor, did not ask to have his parol evidence certified, we have only a certificate of the evidence for the plaintiff. *Ewing* v. *Ewing*, 7 Leigh, 337; *Green* v. *Ashby* 6 Leigh, 135; *Rohr* v. *Davis*, 9 Leigh, 30; *Pasley* v. *English*, 5 Gratt. 148: *Noyes* v. *Humphreys*, 11 Gratt. 651; *Read's Case*, 22 Gratt. 924; *Gimmi* v. *Cullen*, 20 Gratt. 439; *Dean's Case*, 32 Gratt. 912; *Baccigalupo's Case*, 33 Gratt. 811; *Dangerfield* v. *Thompson*, 33 Gratt. 141; *Creekmore* v. *Creekmore*, 75 Va. R. 433; *Taylor's Case*, 77 Va. R. 697.

The only testimony which bears directly upon the question as to what the contract was is that of the plaintiff himself. But giving to this testimony the credit to which it seems to be entitled, an express agreement on the part of Payne to allow the plaintiff one-third of what the land should sell for above the price he gave for it, in payment for his services in developing the veins of gold and in assisting in the sale of the land, seems to be fully established; for he says that on one occasion when he had carried a man named Leason to see the property, and after the three, Payne, Grant and Leason "had made a cut" at their joint expense, that he asked Payne if he disputed his interest, and that " Payne replied that he did not, but that he should have one-third interest in the sale of the land over and above what he (meaning the defendant) gave for it." Now this is a clear

proposal on the part of Payne, and that it was promptly and in terms accepted is put beyond question by the remark of the witness, which follows a second statement of this same interview, "that was the way we were to divide." It also appears from the testimony of this witness that he never meant to surrender any rights (actual or supposed) which he might have under his contracts with the Allens, and this circumstance has been earnestly pressed upon us as showing that the plaintiff relied alone upon his contracts with the Allens. But we do not think this is a legitimate deduction from his testimony taken as a whole. The plaintiff is evidently a very plain, and if not a very ignorant man, at least one unaccustomed to weighing nicely the meaning of words, and it seems to us that all that he means to say is that he regards the Allen contracts as conferring on him a paramount title to or interest in one-third of the proceeds of the sale of the gold veins.

If, however, we are mistaken in this view, and no express contract was made between these parties, it seems to us clear that the acts and words of these parties raise an implied contract. The intention of parties to any particular transaction, says a learned writer, may be gathered from their acts and deeds, in connection with surrounding circumstances, as well as from their words; and the law, therefore, implies, from the silent language of men's conduct and actions, contracts and promises as forcible and binding as those that are made by express words, or through the medium of written memorials. 1 Addison on Contracts, § 30, 31.

And another author of distinction, treating on this subject, says: "The proposal or acceptance of an agreement may be communicated by conduct as well as by words; and proposals and acceptances so communicated are governed, as near as may be, by the same rule as if made in express words. * * *

"Cases are of constant occurrence, and naturally in small matters rather than in great ones, where the proposal, or acceptance, or both, are signified not by words but by acts. For example, the passenger who steps into a ferry boat thereby requests the ferryman to take him over for the usual fare, and the ferryman accepts this proposal by putting off.

"A promise made in this way is said to be implied. It seems to us preferable, however, to use the word *inferred*, to distinguish the real though tacit promise in these cases from the fictitious promise 'implied by law,' as we shall immediately see, in certain other cases where there is no real contract at all, but an obligation *quasi ex contractu.*" Pollock's Prin. Contracts, 28.

In the present case, the evidence clearly establishes that the plaintiff rendered the services required of him; that a part of them were rendered after the defendant had promised to pay him one-third of the price for which the land should sell after deducting the price he paid for it; and that the services of the plaintiff contributed in some degree to bringing about the sale. And, under these circumstances, we think the jury would have been·justified in inferring a contract to pay the full amount proposed by the defendant. The verdict is, therefore, amply sustained by the evidence, and the court below acted properly in refusing to set it aside.

The next assignment of error to be noticed is that the court below improperly excluded two special pleas—viz: the plea of the plaintiff's bankruptcy, and the plea of *res adjudicata,* which, at the proper stage of the proceedings in this case, were offered to be filed by the defendant. As to the first of these pleas, it need only be said that the promise declared on in the declaration was made in the year 1875, whilst the plea avers .the bankruptcy of the plaintiff in 1868. It is plain, therefore, that the plaintiff's right of action, founded on a contract made

in 1875, could not be barred by his adjudication in bankruptcy seven years before.

And as to the plea of *res adjudicata*, it seems to us to have been properly excluded. The defendant, as the record shows, brought into court the record of the suit, in which the plea averred the matter had been decided—viz : the record of a chancery suit prosecuted in the circuit court of Goochland, on a bill of interpleader, filed by William Brandeth (the purchaser from the plaintiff in error of the land, the right to a part of the proceeds of sale of which has given rise to the present suit), and a cross-bill therein filed by the plaintiff, Grant. And the decree made in said cause at the April term, 1879, is the adjudication alleged in the plea. Upon an inspection of that decree it will be seen that it contains the following language : " On consideration whereof the court, without considering anything else, is of opinion that the defendant's demurrer to the plaintiff's bill is insufficient, and doth therefore adjudge and order that the plaintiff's bill be dismissed. * * * * But this decree shall be without prejudice to the plaintiff as to any other action he may be advised to take in this or any other forum, and he has leave to file any proper amended bill, if he shall be advised to do so, within sixty days."

Conceding, then, for the purposes of the argument, that the claim asserted in that cause is the same declared in this suit, the reservation of the right of action contained in the decree mentioned above must prevent that decree from being a bar to this suit.

In Story's Equity Pleading, section 456, we find the law upon the subject stated as follows : "Demurrers, though sometimes for dilatory causes, in the nature of a plea of abatement, are always, in legal effect, in bar of the suit praying for a dismissal of it. But there is this difference, that where the suit is dismissed upon a hearing upon the merits, it is ordinarily,

unless the dismissal be without prejudice, a bar to another bill; whereas, if the bill is dismissed for defect of form or structure of it, not going to the merits, it is no bar to a future suit for the same subject matter." *Hughes* v. *United States,* 4 Wall. 237; *Durant* v. *Essex Co.,* 7 Wall. 107.

As to the other assignments of error, it seems to us to be unnecessary to say more than that we have carefully considered them all, and find no error of which the plaintiff in error could justly complain. But we may also add that if there were any error in the giving or refusal to give the instructions referred to in certain of these bills of exceptions, or in the admission or refusal to admit certain evidence mentioned in other bills of exceptions, that as the verdict is manifestly right, the defendant could not have been prejudiced thereby, and therefore such error, if any, was committed, can afford no ground for a reversal of the judgment complained of. *Brighthope Railway Co.* v. *Rogers,* 76 Va. R. 443; *Danville Bank* v. *Waddill,* 27 Gratt. 448; *Harman* v. *City of Lynchburg,* 33 Gratt. 43; *Kincheloe* v. *Tracewells,* 11 Gratt. 589; *Colvin* v. *Menifee,* Id. 87.

The judgment of the circuit court is therefore affirmed.

JUDGMENT AFFIRMED.