## Richmond.

Torian's Adm'r v. R. & A. R. R. Co.

December 1st, 1887.

Absent, Lewis, P.

Railroad Companies—*Negligence—Fellow servants—Case at bar.*—Where it appears in evidence at the trial of an action for damages against a railroad company for the negligent killing of plaintiff's intestate whilst in its employment as brakeman on material train, that the immediate cause of his death was the rapid running of the train, suddenly accelerated by additional steam, over a track left in an uneven and weakened condition by other employees of the company, who were employed to repair the said track, and who failed to give warning of the condition of the road:

Held:

The defendant company is liable for the negligence of its employees, whose duty it was to repair road and give notice of its condition, and those employees were not fellow servants of plaintiff's intestate.

Error to judgment of circuit court of Nelson county, rendered March 21st, 1882, in an action of trespass on the case wherein E. B. Spencer, administrator of Robert Torian, deceased, was plaintiff, and the Richmond and Alleghany Railroad Company was defendant. The object of this suit, which was brought under the statute (Code 1873, ch. 145, § 7, *et seq.*), was to recover $10,000 damages for the alleged negligent killing of the plaintiff's intestate by the defendant company's agents, on the 25th July, 1881, near Gladstone, in said county. Issue was joined on the defendant's plea of not guilty. At

the trial, when the jury had heard all the evidence on both sides, and the argument of counsel, they returned their verdict in favor of the defendant. Whereupon the plaintiff moved the court to set aside the verdict as contrary to the law and the evidence. This motion the court overruled, and gave judgment according to the verdict. To this ruling, the plaintiff excepted, and in the bill of exceptions the court certified the evidence, and he obtained a writ of error. Opinion states the case.

*R. T. Hubard,* for the plaintiff in error.

*Williams & Boulware,* for the defendant in error.

RICHARDSON, J., delivered the opinion of the court.

As to the material facts involved in this controversy there seems to be no substantial conflict in the evidence adduced by the plaintiff and the defendant respectively. Whatever conflict exists is only as to the inferences deduced from the facts by the witnesses for the plaintiff, and those deduced from the same facts by the witnesses for the defendant.

The plaintiff's intestate was an employee of the defendant company, and engaged as a fellow servant on the same train with George Moon, who was killed on the same day and by the same accident by which the plaintiff's intestate was killed. Moon's administrator also sued the company to recover damages for the negligent killing of said Moon, and in that case also there was, by reason of misdirection by the trial court, a verdict and judgment for the defendant. And the case came before this court on writ of error, and the judgment was reversed. See *Moon's adm'r v. R. & A. R. R. Co.,* 78 Va., 745. The evidence in that case is fully stated in the opinion of the court. The facts in that case and in this are identical, and naturally there is a substantial conformity in the evidence.

When the plaintiff's intestate was killed, he was at his post of duty on the material train of the defendant; was in the due and faithful discharge of his duties as an employee of the defendant company as a train hand in the capacity of rear brakeman, and did not contribute to his death by any negligence of his own. In fact, the defendant company itself proves that all its officers and men of that train were acting within its rules, and that although the train was running at the time with the engine reversed, it was conformable to the usages of the company. It was also proved that the defendant company had acquired the property rights and franchises of the James River and Kanawha company, under an act of the general assembly of Virginia, comprehended in and made a part of the defendant company's purchase of said rights and franchises, whereby it was required to construct and equip a railroad up the valley of James river, from Richmond to Clifton Forge, within twenty months, which had to be a first-class railroad with steel rails and equipped with ample accommodations, &c. Acts 1878–'9, ch. 139, pp. 119–20, and Acts 1879–80, ch. 181, § 3, p. 173. It is proven, too, that the company had advertised to the public that its work had been completed according to contract, and that the road was open to travel, and was running passenger cars on regular schedule up as high as Joshua Falls, some miles above the place where the accident occurred which resulted in the death of the plaintiff's intestate, Torian, and others. It is in proof that that place was entirely free from overhanging trees, rocks, &c., that could have obscured the view or fallen upon the track, which was apparently clear of obstacles or obstructions; that the train was running swiftly with no indication of defect, displacement or breakage in any of its machinery; that there was nothing to indicate the breaking of any wheel or truck, but a motion of the tender was observed by the engineer just at the time of the accident, which to his experienced eye showed at once that "it was off the track," and "just after that he gave her steam to quicken her

up." The tender, which was ahead of the engine, ran off the rails to the right, or on the outside of the curve at that point, as if the outer rail was at too low a level compared with that of the inner rail. The end of the tender next the engine kept the track longer than the other end, which forced it around, and in turning it forced the engine over on the other side of the track next the canal. The train at the time was running at a swift rate of speed. The engine and cars were piled up in a state of wreck; and in this derailment and wreck, Torian, the plaintiff's intestate, was killed.

At the place of the accident a gang of the defendant's hands under their foreman, or section master, one Herndon, were engaged at work in repairing the track; had raised and tamped the track, and had a "run-out," so that at one end of this "run-out" the track conformed to the old level, and at the other end to the new level. The road-bed was not ballasted at this point, and the tamping was with gravel and sand, not rock. As to the difference of elevation between the one end and the other of the "run-out," and as to how far the derailment and wreck occurred beyond the "run-out," there is a conflict of testimony; but the defendant's witnesses put the former at two and a half inches, and the latter at eighty yards. The track was not in first-class order. The rails of the track on the curve where the accident occurred, were not of uniform level. The bed of the road was the firm old tow-path of the canal, but the rails and ties had been raised to level the track; and while the tamping with gravel and sand, under and about the ties, had been done, the filling in had not been completed, and the track was, therefore, not firm and secure, but was yielding more or less in places. The plaintiff's witnesses and McCormick, one of the defendant's witnesses, ascribe the accident to the bad condition of the track. McCormick testified that he heard the train whistle at Gladstone, two miles above the point where the accident occurred. He saw Herndon and hands at work a little below where witness' cross-ties were piled, and which he

expected the train to take up; saw the train and witnessed the accident, and was satisfied that the accident was caused by the bad condition of the road-bed and track; saw and heard of no other cause, and, after accident, he walked down below the wreck, and thought he saw from the fresh dirt evidence that the hands had done work that day below the wreck, an hour before—he judged from the dirt.

The other witnesses for the defendant failed to ascribe the accident to any cause, and some of them expressed themselves as unable to do so. The foreman, Herndon, and his hands heard and saw the train as it approached them, where they were at work, in ample time to signal it, and though they had flags for the purpose, they failed entirely to signal and warn the approaching train of its danger, though it was advancing at considerable speed.

Then, in the light of the evidence, the accident which resulted in the death of the plaintiff's intestate, was caused by the rapid running of this train—suddenly accelerated by putting on additional steam over an uneven or too feebly supported rail on the outside of the curve, and a very short distance below where Herndon was actually at work—and his failure to signal the conductor and engineer of the approaching train, and warn them of the condition of the track, of which he had actual knowledge; or it was his duty to have known from what was plainly open to his view. And we think that such is plainly the inference which the jury should have drawn from the evidence before them.

The law of the case is well settled. It is laid down by this court in the case of *Moon's adm'r* v. *R. & A. R. R. Co., supra,* and the authorities there cited, as well as in subsequent decisions by this court.

It was the duty of the defendant company, the defendant in error, to have and maintain good and safe machinery, structures and roadway. This company's charter required it to maintain a railway which should be first class in all re-

spects. It was its duty to each of its employees to use care and caution in the exercise of its privileges and powers, in selecting its agents and servants, and to use all reasonable precautions, including necessary signals to moving trains, essential to the protection of the lives and limbs, not only of employees, but to the protection of all persons lawfully on its road.

The defendant company, by and through the negligence of its agent, Herndon, in failing to signal the approaching train, and warn it of the danger in its path, was guilty of culpable negligence, which caused the accident that resulted in the death of the plaintiff's intestate, and for that negligence and that result the company is liable in damages. That negligence was the proximate cause of the death of plaintiff's intestate, who was not the co-employee of Herndon, by whose negligence the accident was caused, in the sense which relieves the employer from liability for injuries to one servant, by and through the negligent act or omission of his fellow servant. Such being the facts and the law of this case, it is manifest that the jury were not warranted in finding the verdict returned by them; and we are, therefore, of opinion that the verdict was plainly contrary to the evidence and the law, and that the court erred in refusing to set aside the verdict and award a new trial. It follows that the judgment of the circuit court of Nelson county must be reversed and annulled, the verdict set aside, and the cause remanded for a new trial, in accordance with the views expressed in this opinion.

Judgment reversed.