## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Norfolk & Western Railroad Co. v. Nuckol's Adm'r.

### March 14, 1895.

1. Negligence—*Risks Incident to Service—Fellow-servant.*—A person entering the service of another assumes all risks naturally incident to that employment, including the danger of injury by the fault or negligence of a fellow-servant.
2. Negligence—*Fellow-servants—Probability of Contact.*—The liability does not depend upon the fact that the servant injured may be in another department of the service from the wrong-doer. The test is, were the departments so far separated from each other as to exclude the probability of contact, and of danger from the negligent performance of their duties by employees of the different departments. If they were so separated, then the servant is not to be deemed to have contracted with reference to the negligent performance of the duties of his fellow-servant in such other department.
3. Negligence—*Gradations in Employment—Principal.*—The liability does not depend upon gradations in employment, unless the superiority of the person causing the injury was such as to put him in the category of principal, or vice-principal.
4. Negligence—*Duty of Employer as to Machinery, Appliances, etc.*—It is the duty of an employer to furnish suitable and safe appliances, machinery, structure, and roadway.
5. Negligence—*Duty of Employer in Selection and Supervision of Servants.*—It is the duty of an employer to exercise reasonable care to ascertain the character, habits, and fitness of his employees for the discharge of their duties, and, by proper supervision and superintendence, to keep himself so informed.
6. Negligence—*Concurring Negligence of Master and Fellow-servant.*—Where injury to a servant has been caused by the default of a fellow servant, concurring with the negligence of the master, the latter is liable, as though he only was at fault.

| 91 | 193 |
| 93 | 129 |
| 91 | 193 |
| 94 | 643 |
| 91 | 193 |
| 95 | 403 |
| 91 | 193 |
| 96 | 70 |
| 91 | 193 |
| 97 | 636 |
| 91 | 193 |
| 98 | 697 |
| e100 | 374 |
| 91 | 193 |
| 101 | 195 |
| 101 | 670 |
| 91 | 193 |
| 102 | 465 |
| 91 | 193 |
| 103 | 226 |
| 91 | 193 |
| 105 | 713 |
| 91 | 193 |
| 106 | 98 |
| 91 | 193 |
| 107 | 557 |

7. Negligence—*Fellow-servant—Track Repairer and Engineman.*—A track repairer and engineman, though in different departments, are, by the very nature of their employment, brought into frequent contact, and the risk of negligence by the one must therefore be considered to have been in contemplation of the other when service under the common master was accepted.

Error to a judgment of the Corporation Court of Buena Vista, rendered at its October term, 1893, in an action of trespass on the case, wherein the defendant in error was the plainitff, and the plaintiff in error was the defendant.

*Reversed.*

This was an action of trespass on the case instituted in the Corporation Court of Buena Vista by George W. Nuckols, administrator of George Volney Nuckols against the Norfolk and Western Railroad Company, to recover damages for the death of the plaintiff's intestate, which was alleged to have been occasioned by the negligence of the defendant. The case was tried at the July term, 1893, of the court, and on July 21, 1893, the jury rendered a verdict in favor of the plaintiff for $5,000. At the same term the defendant company made a motion for a new trial, which was overruled, and the company excepted. At this term five bills of exception were signed by the judge of the court and made parts of the record, at the instance of the defendant, but no judgment was entered on the verdict. On September 19, 1893, the plaintiff gave notice to the defendant that at the next succeeding (October) term of the court he would move the court for judgment on said verdict. At the October term, 1893, the motion was made, and judgment was entered *nunc pro tunc* on said verdict, and the defendant excepted.

The facts, so far as necessary to be stated, sufficiently appear in the opinion of the court.

*W. H. Travers* and *E. & E. M. Pendleton*, for the plaintiff in error.

*F. T. Glasgow* and *H. A. White*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a writ of error to a judgment in an action of trespass on the case brought in the Corporation Court of Buena Vista by the administrator of George V. Nuckols against the Norfolk and Western Railroad Company, to recover damages for the death of his intestate, alleged to have been occasioned by the neglignce of the defendant company.   It appears that George V. Nuckols was employed as a track hand by the defendant company, and upon the morning of the accident which resulted in his death was engaged, along with others, in placing a rail upon the track of the defendant company, in the city of Buena Vista, when he was struck by a passing engine drawing one of the trains of the defendant, and died in a short time from the injuries thus received.   Without undertaking to review all of the evidence, it is sufficient to say that it is proved to our satisfaction that the accident was caused by the negligence of the engineman in charge of the engine.

The only question which requires any particular consideration by this court is presented in the defendant's instruction No. 7, which the trial court refused to give, and which is in the following words:

"The court instructs the jury that the deceased, Nuckols, assumed all the risks incident to his employment when he entered the service of the defendant—among them the injuries caused by the carelessness of fellow-servants; and if they believe from the evidence that the death of the said Nuckols was caused by the negligence of the engineman of train No. 30, which inflicted said injury, such negligence cannot be im-

puted to the defendant, the said engineman and the said Nuckols being fellow-servants in the service of the said company.''

This brings up a subject upon which there has been endless diversity of opinion, upon which the courts of the several States have been divided, upon which the decisions of the same courts have not always been harmonious, and as to which it has seemed almost impossible to formulate a rule which will meet the exigencies of all cases, do justice to the employer and to the employee, and promote the efficiency and safety of the railway service.

One of the first cases in which the liability of the master to a servant for an injury occasioned by the act of a fellow-servant came under review by the courts was that of *Farwell* v. *Boston etc. Railroad Co.*, 4 Metc. (Mass.) 49. Chief Justice Shaw delivered the judgment of the court, in a most luminous opinion, in which he says:

''He who engages in the employment of another, for the performance of specified duties and services for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal presumption the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master. They are perils incident to the service, and which can be as distinctly foreseen and provided for in the rate of compensation as any others.''

This view of the law has been accepted in very many of the States of this Union. It has recently been reviewed by the Supreme Court of the United States in *Northern Pacific Railroad Co.* v. *Hambly*, 154 U. S. 349; and Mr. Justice Brown in that case says:

"Upon this subject the authorities are hopelessly divided; that it is useless to attempt an analysis of the cases which have arisen in the courts of the several States, since they are wholly irreconcilable in principle, and too numerous even to justify citation."

He does, however, cite decisions from Massachusetts, New York, Michigan, Indiana, Maryland, Pennsylvania, and many other States, which recognize and follow *Farwell* v. *Boston etc. Railroad Co.*, while he says that in Illinois, Missouri, Virginia, Ohio, and Kentucky the rule is apparently the other way. It appears that the Supreme Court itself has not been altogether free from the uncertainty which attends the consideration of this much-vexed subject, and that its decisions, while they have not been numerous, have not been "altogether harmonious." *Northern etc. Railroad Co.* v. *Hambly*, *supra*, at page 356.

It may be well, therefore, for us to examine with some care into the principles upon which this rule is founded, and to consider the cases in this court in which it has been referred to, and endeavor to ascertain to what extent it has been accepted in this State.

Judge Shaw, in the case above cited from 4 Metc., rests the exemption of the employer from liability to its servant occasioned by the negligence of a fellow-servant upon implied contract. The controlling reason of that decision is that a person entering the employment of another assumes all risks incident to that employment, including the danger of injury by the fault or negligence of a fellow-servant. This proposition has been time and again asserted in this court. The difficulty which has been experienced does not grow out of any doubt or dissatisfaction as to the soundness and wisdom of the proposition, but is found in its application to particular cases, in determining who are and who are not fellow-servants, within the terms and meaning of the rule.

In the case of *N. & W. R. R. Co.* v. *Donnelly's Adm'r*, 88 Va. 853, one of the most recent cases in which this court has dealt with the subject, Judge Lacy declares "that it is well settled that when a servant enters upon an employment he accepts the service subject to the risks that are incident to it;" and he cites with approval 7 Am. & Eng. Enc. Law, p. 821, where it is said "that the general rule resulting from considerations, as well of justice as of policy, is that he who engages in the employment of another, for the performance of specified duties and services for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services. The perils arising from the carelessness and negligence of those who are in the same employment, are not exceptions to this rule; and when a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suitable means to perform the service in which he employs them, he is not answerable to one of them for the injury received by him in consequence of the carelessness of another while both are engaged in the same service." It would seem, therefore, that the general doctrine is fully and broadly accepted by this court; for in the case last cited the court was unanimous.

The case of *Northern Pacific Railroad Co.* v. *Hambly* is very similar to the one under consideration. In that case a laborer in the employ of a railway company, who was engaged in work upon a culvert on the line of the company's road, was injured by the negligence of the conductor and engineer employed in moving a passing train. The Supreme Court held that he was a fellow-servant with the engineer and conductor, and that the railroad company was exempt from liability for the injury so inflicted. In that case the negligence of the engineer and conductor was conceded, and it was not contended that the unfortunate victim of their negligence was at all in fault, yet the court held that he was not

entitled to recover.   In the case before us the party injured was at work upon the track of the defendant company, making certain necessary changes.   There is evidence to prove, and it may be conceded, that the injury he sustained was caused by the negligence of the engineman upon a passenger train, who, unmindful of his duty to observe and watch the track over which he was moving, was at the time of the accident diverted from the performance of this plain and obvious duty, and was engaged in exchanging salutations with the engineman of a train of the Chesapeake and Ohio Railroad Company, passing in an opposite direction upon the track of that company, which at that point approached very near to the roadway of the defendant company.

The principles of law heretofore adverted to as governing the relations existing between a railroad company and its employees in this State, as recognized in many cases, and most recently in the unanimous judgment of the court in the case of *N. & W. R. R. Co.* v. *Donnelly's Adm'r*, above cited, would seem to be conclusive of the case at bar, unless it can be shown to come within some one of the exceptions which have been engrafted upon the rule, and which are to some extent, at least, recognized as proper modifications thereof by decisions of this and other courts.

One of the earliest of these is *Moon's Adm'r* v. *R. & A. R. R. Co.*, 78 Va. 745.   That was a case in which the rear brakeman of a train was injured by the negligence of the section master, who was making repairs upon the track, upon which the dirt had not been filled in and firmly rammed, but only "tamped," and who failed to signal the approaching train, which, in passing over the track in its unsafe condition, was derailed, and the brakeman was caught under the wreck, and died from the injuries thus received.   The court held that his administrator was entitled to recover, and in its opinion says that Herndon, the section-master, was not a fel-

low-servant of the brakeman, and that the defendant company was liable for the injury occasioned to the brakeman by Herndon's negligence. It seems, however, that the true ground upon which to rest the case of *Moon's Adm'r v. R. & A. R. R. Co.* is, that it was the duty of the defendant to have safe appliances, to keep its track in good repair, and to use, with respect thereto, all necessary precautions for the safety of its employees; and while the consequences of the defective condition of the track might have been avoided, had the section master given the proper signals, and the failure to do so upon his part was negligence, and one of the proximate causes of the injuries sustained, yet that the company itself had also been negligent, and the case is one of "concurrence of independent concurring causes." The negligence of the section master and of the defendant company were each of them proximate causes, without the concurrence of which the injury would not have been sustained; and it is well settled that, if the employee is injured by an accident resulting from the concurrent negligence of a fellow-servant and of the employer, the latter is liable as though he were the sole offender.

The case of *Torian's adm'r v. R. & A. R. R. Co.*, 84 Va. 192, arose out of the same state of facts considered in the case of *Moon's Adm'r v. R. & A. R. R. Co.*; and in that case the defendant's liability is made to rest upon the proposition that the immediate cause of the injury was the running of the train, suddenly accelerated by additional steam, over a track left in an uneven and weakened condition by other employees of the company, who were employed to repair the track, and who failed to give warning of its condition. Here it appears very distinctly that the uneven and weakened condition of the track was at least one of the proximate causes of the injury sustained, and the liability might, for this cause, have been fastened upon the railroad company. The court, however, does go on to say "that the defendant company is liable for

the negligence of its employees whose duty it was to repair
the road and give notice of its condition, and those employees
were not fellow-servants of the plaintiff's intestate." At page
196, 84 Va., the court says:

"It was the duty of the defendant company to have main-
tained good and safe machinery, structures and roadway; and
it was its duty to each of its employees to use care and cau-
tion in the exercise of its privileges and powers, in selecting
its agents and servants, and to use all reasonable precaution,
including necessary signals, for moving trains, essential to the
protection of the lives and limbs, not only of its employees,
but to the protection of all persons lawfully on its road."

In the case of *R. & D. R. R. Co.* v. *Norment*, 84 Va. 167,
it appears that Norment was employed by the defendant com-
pany, at its depot yards in Richmond, as an "overhauler," to
assist in fixing up cars needing repairs. On the day he re-
ceived the injury, he was required to put a drawbar spring
into the end of a certain car which stood on a "branch track."
It became necessary for Norment to get under the damaged
car, and while so situated another car was shifted on the branch
track, and driven against the car which was in front of the
car upon which he and his assistant were at work, by which
it, in turn, was driven against the car upon which Norment
was at work, and his hand was caught and greatly injured.
It appears that there was no repair track in the company's
yard; that such repair track was necessary; that the company
knew it to be necessary, and had them elsewhere; that it not
only failed to provide a repair track, but failed also to provide
signal flags. The court held that Norment was not of the
same grade, or in the same line of duty, as Tiller, the engi-
neer, or Robinson, the conductor, of the shifting engine, nor
was he under the orders of either of them, and that the case
was controlled by that of *Moon's Adm'r* v. *R. & A. R. R.
Co.*, 78 Va. 745, and the liability of the railroad company

was again asserted; the exact point decided being that an overhauler engaged in the repair of the company's cars is not a fellow-servant with the conductor and engineer in the employment of the same company, engaged in the moving of cars in the same depot yard, by the negligent performance of whose duties the accident was sustained. The decision in this case was perfectly correct, but there are expressions in the opinion which we do not consider to have been at all necessary to the conclusion reached by the court, and to which we cannot give our approval. It will be observed that the court lays much stress upon the fact that the defendant company had failed to provide suitable appliances for the protection of its workmen, in that it had not furnished a repair track and signal flags. To consider how far the absence of these appliances, obvious to the employee, could or should have influenced the determination of the court, would lead to a discussion involving the doctrine of contributory negligence, and would be a vain attempt to elucidate one difficult subject by the discussion of another equally doubtful and difficult.

There is a case in 81 Va. 71, (*B. & O. R. R. Co.* v. *Mc-Kenzie*), which is sometimes cited as bearing upon this subject. It decides that in that case the question whether or not the "negligent employee was a co-employee of the party injured, or was the representative of the defendant company, was a question of mixed law and fact, to be decided by the jury under suitable instructions from the court, and that it was not proper to instruct the jury that the plaintiff and the negligent servant were co-employees and did not stand in the relation of subordinate and superior, which principle, however correct it may have been in that case, can have no application here, where the inquiry proceeds upon admitted facts, and the only question is to asertain the law appliable to them.

In *Hambly's Case*, 154 U. S. 349, Justice Brown says: "As a laborer upon a railroad track, engaged either in

switching trains or repairing the track, is constantly exposed to the danger of passing trains, and bound to look out for them, any negligence in the management of such trains is a risk which may or should be contemplated by him in entering upon the service of the company. This is probably the most satisfactory test of liability. If the departments of the two servants are so far separated from each other that the possibility of coming in contact, and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the persons injured, the doctrine of fellow-servant should not apply. In this view, it is not difficult to reconcile the numerous cases which hold that persons whose duty it is to keep railroad cars in good order and repair are not engaged in a common employment with those who run or operate them."

A person entering the service of the company to assist in building or repairing cars or engines would not be held to have contemplated the possibility of injury by the negligence of those engaged in moving trains, and hence they would not be fellow-servants, while a person entering the service of a railway company as track repairer is constantly brought in contact with, or at least in close proximity to, those operating trains, and, therefore, must be held to have contracted with reference to the danger resulting from the negligence of those thus engaged. In a sense, the car builder and repairer, and the track maker and repairer may be classed as belonging to the construction department of the railway company, but the liability is not determined by that consideration. The railroad company would be held liable to a car repairer for the negligence of its servants engaged in running trains, and exempt from liability to the track repairer for the negligence of employees upon the passing train, because the latter would be deemed to have contemplated this risk upon entering the employment of the company, while the former could not, by any

reasonable intendment, be presumed to have contemplated a risk so remote.

As I have before said, the rule under consideration is nowhere more thoroughly recognized than in this State. It was originally adopted because it fixed the liability where it could best be borne. It was intended, by placing this responsibility upon the employees, to introduce a safeguard beneficial alike to the servant and the master and to the public, by invoking the self-interest of the employees to see that each carefully and faithfully discharged the duties of his position, while imposing upon the master the duty of care and discretion in the selection of his servants. That the rule, in the main, is a wise one, has been demonstrated by long experience. The case so often cited, in which Chief Justice Shaw, in this country, at least, first unfolded the principles upon which it rests, was decided more than half a century ago. That decision has extended its influence until it is now law for more than half the States of this Union. It is sustained by an overwhelming preponderance of authority, and it must be deemed a just measure of the relative rights and duties growing out of the relation of master and servant. It has, too, been criticised and objected to, and efforts have been made in various jurisdictions to limit and confine it. In some States, what is called the doctrine of "superior and subordinate" has been recognized; in others, the "separate department" doctrine has been adopted; and of these the Supreme court says:

"Of both classes of cases the same observation may be made, viz., that to hold the principal liable whenever there are gradations of rank between the persons receiving and the persons causing the injury, or whenever they are employed in different departments of the same general service, would result in frittering away the whole doctrine of fellow-service. Cases arising between persons engaged together in the same identical service, as, for instance, between brakemen of the same train,

or two seamen of equal rank in the same ship, are compari-
tively rare. In a large majority of cases there is some dis-
tinction, either in respect to grade and service, or in the
nature of their employments. Courts, however, have been
reluctant to recognize these distinctions, unless the superiority
of the person causing the injury was such as to put him rather
in the category of principal than of agent—as, for example,
the superintendent of a factory or railway—and the employ-
ments were so far different that, although paid by the same
master, the two servants were brought no further in contact
with each other than if they had been employed by different
principals." *Hambly's Case*, 154 U. S. 349.

It has been felt that the general rule did not accomplish
exact justice in all cases. No general rule does. The diffi-
culty of applying the most favored classes of exceptions which
make the liability rest upon the idea of subordination or of
employment in separate departments is shown by the quota-
tion just given. There is as much diversity of opinion as to
the so-called exceptions to the rule as to the rule itself. The
result, therefore, has been to add to the uncertainty and con-
fusion, to embarrass the administration of justice, and to in-
crease litigation. The effort of courts should be to render
the law, so far as it falls to them to declare it, certain and
plain, so that all men may know their rights and their duties.
The object here sought is a plain rule regulating and controll-
ing some, at least, of the more important relations between
railway companies and their employees. There are interested
in the solution of this problem the employees, as a class—and
not merely those who have been or may be injured—the em-
ployer and the public. That the particular rule is, in its ap-
plication, always invoked by the employer to defeat the de-
mands of the injured employee does not at all prove that the
employees, as a class, are not greatly benefited by it. The
number of those injured by the negligence of their fellow-ser-

vants is, unhappily, very great, but the proportion they bear to the whole number of employees is very small.   If the rule, while operating to the disadvantage of the injured few, promotes the safety of the far greater number of those who sustain no injuries by introducing a salutary superintendence over each other among the servants of the company, then the rule, while beneficial to the employer, is not less so to the employee; for that which promotes immunity from danger is more to be desired than the pecuniary compensation for the injury could be, and, being promotive also of the efficiency of the service, is obviously in the interest of the public.   It is to be considered also in connection with other rules applicable to the relation of master and servant.   The duty is imposed upon the master to exercise caution and discretion in the selection of the servants who are to be "fellows," and mutually responsible to each other, and he must not retain in his service any one found to be unfitted to discharge the duties assigned him.   In the due performance of this duty by the master, the employees, as a class, and the public at large, are deeply interested; and the effect of the rule is to make it to the interest of the employees to keep the employer advised as to the habits, character, and qualifications of the fellow-servants.

It appears that the case of *Donnelly's Adm'r*, 88 Va. 853, repudiates the exceptions, and evinces a disposition to return to the simple terms of the rule stated by Chief Justice Shaw. It throws aside the doctrine of "inferior and superior," of gradations in employment, and of "separate departments," and states forcibly and clearly that "all serving a common master, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow-servants, and take the risk of each other's negligence."   Neither *Farwell's Case*, in 4 Metc. (Mass.) 49, nor *Hambly's Case*, in 154 U. S. 349, among the first and the

last of the reported cases upon this subject, states the proposition, more tersely and succinctly than in the above quotation. Indeed, to my mind, *Donnelly's Case* lays down a less plastic and more inflexible rule than either of the cases just cited.

I shall not try to do what so many eminent judges have refrained from attempting. I shall not undertake to draw a hard and fast line delimiting the liability of the employer, but shall content myself with the following propositions, which are, I think, fully warranted by the great weight of authority in this State and elsewhere:

1. A person entering the service of another assumes all risks naturally incident to that employment, including the danger of injury by the fault or negligence of a fellow-servant.

2. The liability does not depend upon the fact that the servant injured may be in a different department of the service from the wrongdoer. The test is, were the departments so far separated from each other as to exclude the probability of contact, and of danger from the negligent performance of their duties by employees of the different departments? If they are so separated, then the servant is not to be deemed to have contracted with reference to the negligent performance of the duties of his fellow-servant in such other department.

3. The liability does not depend upon gradations in employment, unless the superiority of the person causing the injury was such as to put him in the category of principal or vice-principal.

4. It is the duty of the employer to furnish suitable and safe appliances, machinery, structure and roadway.

5. It is the duty of the employer to exercise reasonable care, prudence and discretion in ascertaining the character, habits and fitness of his employees for the discharge of the duties to be assigned to them, and, by proper supervision and

superintendence, to keep himself informed as to the manner in which the duties intrusted to them are performed.

6. Where the injury to the servant has been occasioned by the default of a fellow-servant, concurring with the negligence of the master, the latter is liable as though he only were at fault.

7. A track repairer and engineman, though in different departments, are, by the very nature of their employment, brought into frequent contact, and the risk of negligence by the one must, therefore, be considered to have been in contemplation of the other when service under the common master was accepted.

It results from what has been said, that, in our opinion, the seventh instruction asked for by the defendant ought to have been given by the court, and for its refusal to do so the judgment of the Corporation Court of Buena Vista must be reversed.

REVERSED.