# Reiser, Appellant, *v.* Pennsylvania Co.

*Negligence—Fellow servants—Railroads.*

A fireman of a locomotive and a station agent who is also a telegraph operator, are fellow servants within the rule that an employer is not liable to an employee for an injury caused by the negligence of a fellow servant.

*Negligence in employing servants.*

Although a servant may not be properly qualified for the place he occupies, his employer cannot be charged with the consequences of his negligence, in a suit by a fellow servant for personal injuries, if it does not appear that the employer knew, or in the exercise of reasonable diligence should have known, that the servant was incompetent to discharge the duties of the position to which he was assigned.

*Notice of servant's incompetency—Railroads.*

Notice of the incompetency of a telegraph operator given to the chief train dispatcher of a railroad is not sufficient to charge the company, where it appears that the dispatcher had no power to employ or discharge operators.

Argued Jan. 28, 1892.    Appeal, No. 455, Jan. T., 1892, by plaintiff, Catharine Reiser, from judgment of C. P. Erie Co., Sept. T., 1886, No. 106, on verdict for defendant.    Before STERRETT, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Case for death of Adam Reiser, fireman in employ of defendant company, and husband of plaintiff.

At the trial, before GUNNISON, P. J., it appeared that Reiser was killed in a collision caused by an erroneous dispatch sent by W. W. Crossman, station agent and telegraph operator at Wheatland station.

The train dispatcher sent a duplicate order to New Castle and Wheatland that the train on which plaintiff's husband was fireman would pass another train at West Middlesex, but the operator Crossman by mistake substituted Pulaski in his copy of the order delivered to the train as it passed his station. No copy of the order was sent by the train dispatcher to West Middlesex. The train from Wheatland passed Middlesex on its way to Pulaski and collided with the other train. Rule No. 3 of the company provides that each order will include no more than two trains and one specified movement. Rule No. 8 provides that an order to be transmitted to two or more offices will be sent to them simultaneously. Rule No. 11 further pro-

vides for the transmission of train orders to two or more offices simultaneously. Under the rules the train dispatcher had authority to issue orders for the movements of trains in the name of the superintendent.

The facts as to Crossman's incompetency for his position and the notice which the company had of it are stated in the opinion of the Supreme Court.

Plaintiff asked the court to charge among other things that if the jury believe that the transmission of the order to Middlesex, the passing station, as well as to the two other points, would have been exercising ordinary care, the failure to exercise such ordinary care was negligence.

The court charged as follows, by GUNNISON, P. J:

" I cannot see that there is anything to submit to the jury. The uncontradicted evidence is that the accident occurred through the mistake or fault of the operator in not transcribing the proper station and giving notice of the proper station to the conductor and engineer of this train. Now whether there was some carelessness or lack of a proper rule, or whether the rule suggested by plaintiff's counsel would be a proper rule or not, it does not show that the lack of that was what caused the accident. The proximate cause was the mistake or carelessness of the operator. I do not see how any other conclusion could be arrived at from the evidence. There is no contradiction of it. It is testified to positively by the operator himself, and not contradicted, and then the uncontradicted evidence of a number of other witnesses is that the order, as sent from the train dispatcher, was correct. The only ground then upon which the plaintiff could recover was that there was negligence in employing an incompetent operator, and I cannot see any evidence of such negligence. It cannot be presumed. It must be proven. And I very reluctantly, after examining the authorities cited by counsel last night, and some others, and considering them carefully, have come to the conclusion that it is my duty to give binding instructions for the defendant. That will render it unnecessary to answer the other points in detail."

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was the charge, quoting it.

*George A. Allen, L. Rosenzweig* with him, for appellant, cited Lewis v. Seifert, 116 Pa. 628; Crew v. St. L. K. & N. W. Ry., 20 Fed. Rep. 87.

*J. Ross Thompson,* for appellee, cited Huntingdon & Broad Top Mt. R. R. v. Decker, 82 Pa. 119; s. c., 84 Pa. 419; Frazier v. Penn. R. R., 38 Pa. 104; Caldwell v. Brown, 53 Pa. 453; O'Donnell v. Allegheny Valley R. R., 59 Pa. 239; Patterson v. Pittsburgh & Connelsville R. R., 76 Pa. 389; Moules v. D. & H. Canal Co., 141 Pa. 632; Titus v. R. R., 136 Pa. 618.

OPINION BY MR. JUSTICE MCCOLLUM, November 11, 1892:

Adam Reiser was in the employ of the Pennsylvania Company as a fireman, and the proximate cause of the collision in which his life was taken, was the negligence or incompetency of W. W. Crossman, who was a station agent and telegraph operator in the employ of the same company, and his fellow servant. There was evidence tending to show that Crossman was not properly qualified for the place he occupied, but this alone was not sufficient to charge the company with negligence in employing him or in retaining him in its service. It should also appear that the company knew or in the exercise of reasonable diligence should have known that he was incompetent to discharge the duties of the position to which he was assigned. An effort was made to affect the company with knowledge of his incapacity, and the result of it is found in the testimony of G. L. Campbell, Jacob E. Swap and G. D. Gilson. Campbell, who was in the employ of the Pennsylvania Company at Albion as station agent and telegraph operator for some time prior to July, 1885, testified that Crossman was in his office from the spring of 1884 to the first of January, 1885, for the purpose of learning and practicing telegraphy, and that when he left it he was not a skillful operator. He also testified that the telegraph operator at Pittsburgh, and Perdue, the chief train dispatcher, wished him " to keep that cub (meaning Crossman) off the line." He does not state how, when or to whom this wish was expressed, or what reason, if any, was given for it. He admitted, however, that he kept Crossman in his office in violation of a rule of the company, and it is not strange that his fellow servants " wished " him to comply with a reasonable regulation established by their common employer.

Jacob E. Swap testified that directly after Crossman was put at Wheatland as station agent, he said to Perdue " what are you doing with that noodle up at Wheatland? " That Perdue inquired what he meant, and he replied, " Crossman, the agent there, he will get you into trouble yet; he don't know what he is doing half the time." He also testified that Crossman " was very flighty in his disposition and was rattled in his business," and that he thought he was incompetent. Gilson was of opinion that Crossman was not qualified for the place he filled, although he would not say he was an unskillful operator. This is the evidence relied on by appellant to show that the company knew Crossman was incompetent at the time it employed him, or retained him in its service after notice of his incompetency. It should be stated in this connection that Campbell was the only witness whose knowledge of Crossman's alleged incapacity antedates his employment by the Pennsylvania Company, and this knowledge relates to a period several months prior to such employment. On this branch of the case the company might have relied on the presumption that it exercised due care in the selection of its servant whose negligence caused the collision, because Campbell's evidence was insufficient to rebut it. But it did not do so. It showed by testimony which was not disputed that such care was in fact exercised. Did the company have notice while Crossman was in its service that he was incompetent? We think not, unless notice to Perdue was notice to the company. It is contended by the appellant on the authority of Lewis et al. *v.* Seifert, 116 Pa. 628, that Perdue was a vice-principal, and that his knowledge of the incompetency of the station agents and telegraph operators in the service of the company must be considered as its knowledge. This might be so if he was clothed with the power of employing and discharging such servants. But he was not charged by the company with its duty in reference to the selection and retention of its employees. To the extent that he was the representative of the company in the performance of a positive duty it owed to its servants, it is responsible to them for his negligence, but beyond that it is not. The contention of the appellant that the knowledge of Perdue respecting the qualifications of Crossman was the knowledge of the company finds no support in Lewis *v.* Seifert, supra. In

that case the company was held liable for an injury to an employee caused by the negligence of its representative in the performance of a duty it owed to its servants. In this case the death of Reiser was attributable to the negligence of Crossman who was his fellow servant, and as the company was not in default in employing him, or in retaining him in its service, it is not responsible for the consequences of his negligent act.

We are unable to discover any negligence on the part of the train dispatcher or his assistants in connection with the order in question. It was given in conformity with the rules, and there is no evidence which justifies an inference that in establishing them the company was in any default.

The specification of error is overruled.

Judgment affirmed.