GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY
COMPANY V. SAM G. ECKOLS.

No. 343.

1. **Damages—Facts Stated Sufficient to Show.**—The petition alleges a knowledge by plaintiff of the incompetency of the fireman, who by his incompetency caused the injury; and further states, that as soon as plaintiff learned of the unfitness of the fireman he complained to his foreman, the proper person to notify, whose duty it was to discharge the fireman; and that he promised plaintiff, if he remained in the service of defendant, he would have the fireman discharged, and have a competent fireman employed; and when injured, plaintiff was ignorant that the fireman had not been discharged. *Held*, the petition shows a cause of action, and to go further than plaintiff has done in his petition would be to plead matters of evidence.

2. **Evidence of Incompetent Employe—Notice Imputed to Employer—Immaterial When Employe Has Knowledge of Incompetency.**—When the evidence tends to show the fireman was incompetent, and that such was his general reputation among those in the yards, this may have been sufficient to impute to the defendant knowledge of his unfitness; but this becomes unimportant when the testimony shows plaintiff had knowledge of this incompetency; he could not hold the master liable, for the injury is chargeable to plaintiff's own negligence, and the risk was one assumed by him. Railway v. Whitmore, 58 Texas, 286.

3. **Vice-Principal.**—See opinion for facts insufficient to show that the foreman to whom plaintiff complained was a vice-principal.

4. **Charge.**—A charge which assumes a controverted fact to be true, is erroneous.

5. **Charge Should Conform to the Pleadings.**—When a party alleges incompetency of a fireman as the cause of injury, the charge should limit the right to recover to the incompetency of the fireman.

APPEAL from Bexar.    Tried below before Hon. W. W. KING.

*Upson & Bergstrom*, for appellant.—1. The petition was insufficient. Sayles' Civ. Stats., arts. 1187, 1195; Railway v. Hennessey, 75 Texas, 155; Williams v. Railway, 60 Texas, 205; Clark v. Railway, 15 Fed. Rep., 588; Railway v. Smith, 74 Texas, 276; Railway v. Harrington, 62 Texas, 598.

2. A servant remaining in a master's employ with knowledge of the incompetency of a fellow servant assumes all risk occasioned thereby. Railway v. Whitmore, 58 Texas, 276.

3. The charge given was erroneous. Railway v. Rowland, 22 S.W. Rep., 134; Wright v. Railway, 25 N. Y., 562; Hayes v. Railway, 3 Cush., 270; Railway v. Brentford, 79 Texas, 619; Railway v. Smith, 76 Texas, 611; Railway v. Farmer, 73 Texas, 85.

4. The court should have instructed a verdict for defendant. Dallas v. Railway, 61 Texas, 200; Railway v. Rider, 62 Texas, 268; Railway v. Faber, 77 Texas, 153.

*Fleming, Camp & Camp*, for appellee.—1. The demurrers should have been overruled. Railway v. Brinker, 68 Texas, 502; Railway v. Drew, 59 Texas, 12; Railway v. Donnelly, 70 Texas, 373.

2. The charges given were correct. Railway v. Dunham, 49 Texas, 188; Gillam v. Railway, 13 Allen, 440; 5 Am. and Eng. Ry. Cases, 559; Railway v. Harney, 28 Ind., 28; 2 Thomp. on Neg., 944; Grube v. Railway, 11 S. W. Rep., 736.

JAMES, CHIEF JUSTICE.—This was a suit for damages for personal injury received on November 30, 1890.

The first and second assignments of error are to the overruling of exceptions to the petition.

The first states the exception to have been, that the petition fails to state facts showing wherein or how the inexperience or incompetency of defendant's fireman caused or contributed to the accident or injury, or what signals were given to the said fireman which he misunderstood; and in this particular the pleading fails to state any facts, and states the conclusions of the pleader.

The second is, that said petition shows that if defendant's fireman was unfit or incompetent to perform the duties for which he was employed, then that plaintiff knew such fact, and assumed all risk of injury by reason of the incompetency.

While the petition alleges that plaintiff prior to the injury knew of the incompetency of the fireman, it states further, that as soon as plaintiff learned of it he complained to his foreman, O'Toole, and that this foreman, who was the person to whom to complain, and whose duty it was to see that the incompetent fireman was discharged, then and there promised plaintiff, that if he would remain in the service of defendant he would see that the fireman was discharged, and another, a competent fireman, employed in his place; by which promise plaintiff was induced to remain until the injury occurred. These allegations were made to avoid the effect of plaintiff's concurrent knowledge of his fellow servant's unfitness, and with a further allegation that plaintiff, when he was injured, was ignorant of the fact that the fireman had not been discharged, the pleading would in this respect have been complete. This is the only defect that we can discover that would come under the second assignment, if the assignment is broad enough

to include it, which is doubted.    We regard the petition as sufficiently specific to be free from the exception mentioned in the first assignment. To go further than plaintiff has done in his petition would be to plead matters of evidence.    It is true, the petition alleges that plaintiff gave a stop signal, and his allegations show that the train stopped in obedience to the signal, from which it would seem to follow that the fireman did not misunderstand the signal, and therefore this injury did not result as alleged from incompetency in that respect.    The extent of the allegation, however, is that the injury happened through the fireman's inexperience and incompetency in not *properly* understanding the signal for the purpose given, and that the signal given was one to stop the train, so that plaintiff could cut off the coaches.    The stopping of the train and its being put in motion while plaintiff was under the cars, all of which was alleged to have been caused by the fireman, may, as was alleged, have been the result of his inexperience or incompetency, as the signal to stop for the purpose of uncoupling coaches necessarily involved a stop long enough for that purpose, which the fireman by reason of inexperience or incompetency may not have fully understood.    There was evidence on the trial, that after the signal to stop, the train should not have been moved without further orders.    The allegations cover this state of facts, and we think the first assignment of error not well taken.    The fifth and sixth assignments of error do not disclose any errors, when the other evidence in the case is considered.

The plaintiff was employed as one of the switchmen in defendant's yards at San Antonio, of whom O'Toole, whose proper name was Fuller, was foreman.    The statement of plaintiff's case from his petition is, that it was a part of his duties to couple and uncouple cars in the yards; that the said foreman, who was a vice-principal, ordered him to cut off two coaches of a passenger train, and plaintiff in obedience thereto signaled the fireman to stop the train, so that plaintiff could cut off the coaches; that it was the fireman's duty to communicate the signals to the engineer; that after the train came to a standstill plaintiff went between or under the cars to uncouple the coaches, and while there and exercising proper care in performing this duty the train was set in motion through the negligence, inexperience, and incompetency of said fireman in not properly understanding the signals used by employes of defendant's company in handling trains, in consequence of which plaintiff's head was caught and mashed, leaving him severely injured.

There is no question that plaintiff and the fireman to whom the cause of the injury was charged were fellow servants.

There is evidence tending to show that the fireman was incompetent, and that such was his general reputation among those in the yards.    This may have been sufficient to impute to the defendant

knowledge of his unfitness.    Wood's Mast. and Serv., sec. 421.    This feature, however, becomes unimportant, when plaintiff both in his pleadings and testimony shows that he himself had knowledge of this incompetency.    The master may have been derelict in his duty to plaintiff in not using due diligence to provide a competent fireman, or in retaining him after knowing of his incompetency; but if plaintiff likewise knew of the incompetency of the fireman, and remained in the service with him, and was injured through his unfitness, he could not hold the master liable, for in such case his injury is chargeable to his own negligence, and the risk was one assumed by him.    Wood's Mast. and Serv., sec. 442; Railway v. Whitmore, 58 Texas, 286.    In order to hold the master liable under these circumstances, it became necessary for the plaintiff to make and prove the allegation that the defendant or its representative induced him to remain in its employ by a promise to remove the fireman, and that plaintiff when injured did not know this had not been done.

In our judgment, the evidence in the record is wanting in sufficiency to show this state of facts.

The evidence upon which must rest a finding that the defendant promised to remove the fireman, is that of plaintiff, as follows: "I complained the evening before to O'Toole, who was the party from whom I received my orders; he was the proper man to complain to; O'Toole promised me that he would have another man on the engine; next morning when I was switching, at the time I got hurt, I did not know who the fireman was at that time."

The other testimony in the case is of a positive character, that O'Toole had no power to employ and discharge any employe; that he was a switchman, and had direction of the work of certain other switchmen in the capacity of foreman; that the yardmaster was the person who employed and discharged the switchmen, and the roundhouse foreman and the general foreman were the persons who had the authority to employ and discharge firemen.

The decisions of this State hold that the foreman O'Toole was not a vice-principal.    Railway v. Williams, 75 Texas, 4; Railway v. Smith, 76 Texas, 618.    The evidence of plaintiff above quoted, and which is all we find in the record which could possibly be relied on to support a finding that this foreman was the representative of the defendant in making the promise, does not tend to show that he had the power to employ or discharge those under him, or the fireman.    It does state that O'Toole was the person from whom he received orders, and that he was the proper man to complain to, but this latter expression is evidently what the witness concluded from the fact that he received his orders from O'Toole.    If it should be taken as proved that the foreman was authorized by the company to receive complaints, the effect of the complaint would have been to convey actual notice to the

company of the fireman's incompetency, and this is all that is claimed for it by appellee's brief.

It would not tend to prove that O'Toole was the company's representative to employ and discharge, or to make the promise which plaintiff says was made to him. There was no fact or circumstance tending to show that he had ever exercised the power to employ or discharge, or that defendant had ever recognized him as its representative to make an agreement such as was claimed he made in this instance. While a finding of a jury will not be disturbed if there is any evidence to support it, this rule is to be understood in the sense that the evidence is reasonably sufficient to admit of such finding. Chandler v. Meckling, 22 Texas, 36; Railway v. Somers, 78 Texas, 441.

The burden was upon the plaintiff, in seeking to avoid the defense of fellow servant, to prove the fact that the person who induced him to remain under a promise to remove the fireman was the representative of the master; and we feel constrained to say that there was no evidence legally sufficient to make this appear.

There was no error, as alleged in the fourth assignment, in permitting the plaintiff to testify, that on the day before the accident he made complaint to O'Toole, who promised to have another man on the engine. This testimony, however, should not have been allowed any effect unless proof were made that O'Toole was a vice-principal, which as we have shown was not done.

The defendant sustained no injury from the question propounded to Harry Naugle, the yardmaster, because the answer of the witness as shown by the statement of facts (not the bill of exceptions) was not prejudicial. The charge complained of by the eighth assignment is subject to the objection, that it assumes that O'Toole was the representative of defendant. The second clause of the charge reads: "If you believe from the testimony that plaintiff was injured, and his injuries were caused by the negligence of Ross, the defendant company's fireman, and you believe further from the testimony that the said fireman was incompetent, and the defendant company retained him in its employ after it had received knowledge of his incompetency, and you further believe from the testimony that the plaintiff knew of said fireman's incompetency and requested his discharge, and the foreman agreed to have him discharged, and the plaintiff at the time of his injury believed he had been discharged, then you will find for the plaintiff."

The assumption in this charge, that the act of the foreman was the act of the defendant, is absolute. The jury's attention is directed to the above clause by the sixth clause of the charge, which reads as follows: "You are instructed, that the plaintiff when he entered the employ of the defendant company not only assumed all the risks and hazards incident to that character of business, but all risks arising

from the negligence of fellow servants, subject only to the qualification given to the second division of this charge."

This would be reason for reversal, even had there been evidence tending to show that O'Toole represented the master.

The above charge is further said to be erroneous in authorizing the jury to find for the plaintiff if he was injured by reason of the *negligence* of the fireman Ross, without limiting such recovery to injury to the plaintiff by reason of the *incompetency* of the fireman. The cases observe the distinction mentioned in this objection. A competent employe may at times be guilty of negligence, and it would have been proper in this case, as the pleadings are, to have restricted the defendant's liability to acts of the foreman attributable to his inexperience and incompetency. If the pleadings had charged the foreman with being a reckless employe, it would probably have been different. However, defendant would not be allowed to profit by this question on this appeal, as one of the charges asked by defendant and given (number 7) proceeded contrary to this distinction.

The ninth assignment objects to the following charge: "If you find from the evidence that the fireman Ross was incompetent, and the plaintiff complained to the foreman of the switch engine upon which Ross was working of his incompetency, and you further believe from the testimony that under the rules or customs of the defendant company such foreman was the proper person to whom complaints of incompetency should be made, and he had supervision and control over said fireman, then the complaint to the foreman is notice to the company, and after such notice the defendant company is not protected from injuries to its employes from negligence of such incompetent fellow servants, yet if the defendant company failed to discharge said Ross, and the plaintiff knowing that fact remained in its employ and continued to work with him, the law makes him assume all risk arising from such servant's negligence."

The objection is, that there was no evidence that O'Toole had any power to employ or discharge the fireman, and no evidence that it was the custom that such notice should be given to the foreman. The evidence on these subjects is as appellant states it to be, and the charge was proper.

We do not deem it necessary to discuss the sufficiency of the evidence to support a verdict for the plaintiff, had the relation of O'Toole been shown to have been that of a vice-principal. This seems to us indispensable to plaintiff's recovery as the case is presented. If he was not a vice-principal, the plaintiff's misfortune was occasioned by the acts of his fellow servants.

If the evidence is the same on another trial, the court should instruct the jury to return a verdict for the defendant.

It is our opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 16, 1894.