# NORTHERN PACIFIC RAILROAD COMPANY v. POIRIER.

ERROR TO THE COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 295. Argued April 27, 28, 1897. — Decided May 10, 1897.

A brakeman on a regular train of a railroad and the conductor of a wild train on the same road are fellow-servants, and the railroad company is not responsible for injuries happening to the former by reason of a collision of the two trains, caused by the negligence of the latter, and by his disregard of the rules of the company.

THIS was an action originally brought in a court of the State of Washington, and which was removed into the Circuit Court of the United States for the District of Washington.

The plaintiff in his complaint alleged that, on the 7th day of December, 1892, while in the employ of the Northern Pacific Railroad Company as a brakeman, he received personal injuries of a severe character occasioned by the negligence of the defendant company.  The plaintiff recovered a verdict in the sum of $21,600, which was reduced; upon the election of the plaintiff, to avoid a new trial, to the sum of $7500, for which judgment was entered.  The case was taken to the Circuit Court of Appeals of the Ninth Circuit, where the judgment of the trial court was affirmed.  The case was then brought to this court on a writ of error to the judgment of the Circuit Court of Appeals.  The principal facts of the case are thus stated in the opinion of the Circuit Court of Appeals:

"The collision occurred about midnight.  The first train was a regular local freight train, running on schedule time, under the management, control and direction of the conductor.  The second train was running under telegraphic orders, without any schedule or time card, known in railroad parlance as a 'wild train.'  At Moscow, a station on the railroad, the second train was standing upon the track when the first train left that station.  At Vollmer, another station, the first train stopped to drop some cars.  It was detained about ten minutes, when it resumed its course over the mountain grade.  The second train was then in sight, standing on the track, a short distance in the rear, with its lights plainly visible.  Clyde Spur, where the collision occurred, is about six miles from Vollmer.  It is a place on the road where there is a spur track running out to a logging camp where saw logs and cordwood are loaded on the cars.  There is a side track or switch upon which cars are left to be run out on the spur track.  It is not a regular station, and the regular freight train only stops there when there are empty cars to be left or loaded ones to be taken away.  The first train, on

the night in question, had certain cars to be left at this place, and stopped there for that purpose. There were three brakemen on the train. The head brakeman, when the train was slowing up, left his place and started forward to open the switch. The rear brakeman, at this time, saw the second train rounding a curve in the road, and immediately signalled it to stop, and at the same time shouted as loud as he could. The second train was then about one quarter of a mile behind the first train. The first train had barely come to a full stop when the second train, moving at a speed of about four miles an hour, struck it by running the cow-catcher of its engine under the rear end of the caboose on the first train. The conductor of the first train had been lying down, but was in his seat in the lookout of the caboose, and passed out of the rear end just before the collision occurred. The conductor of the second train had not been informed that the first train would stop at Clyde Spur."

By the shock caused by the collision of the two trains the plaintiff, who was acting as middle brakeman, was thrown from the car on which he was standing, and received severe injuries.

In the plaintiff's complaint it was alleged "that the said defendant, the Northern Pacific Railroad Company, was guilty of carelessness and negligence in this, that the conductor of said first train well knew that said second train was following said first train and failed to leave a flagman in the rear of said first train before and at the time said first train stopped at said Clyde Spur, to hold and stop said second train, as he was in duty bound to do; that the place where said collision occurred was on a mountain grade, and the said defendant, the Northern Pacific Railroad Company, was guilty of carelessness and negligence in allowing said second train to follow the first train closely, and was guilty of carelessness and negligence in running the second train into said first train, whereby the plaintiff was injured as aforesaid." The defendant, answering, denied negligence on its part, and alleged that plaintiff's injuries were owing to and caused by his contributory negligence and by the carelessness and negligence of his

fellow-servants.   It is admitted in the brief of the plaintiff in error that the defence of contributory negligence on the part of the plaintiff was not made out, and the controversy resolves itself into the question whether the plaintiff's injuries were caused by the negligence of his fellow-servants within the rule on that subject.

Before the trial, and on the application of the attorneys for the plaintiff, it was ordered that Thomas F. Oakes, Henry C. Paine and Henry C. Rouse, the receivers of the defendant company, be, and they were thereby, made parties defendant in the action.

*Mr. C. W. Bunn* for plaintiffs in error.

*Mr. S. C. Hyde* for defendant in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

At the close of the evidence the plaintiff moved the court to give the following instruction :

"In this case there is no evidence that the defendant, the Northern Pacific Railroad Company, was guilty of any negligence which caused the accident by which plaintiff was injured, or which contributed thereto, and that if there was any negligence it was that of the engineer and conductor, or one of them, of the second train, and such conductor and engineer being fellow-servants of the plaintiff, there would be no liability therefor on the part of the railroad company, and therefore you will return a verdict for the defendants."

The refusal of the trial court to give this instruction was assigned for error in the Circuit Court of Appeals, and the ruling of the latter court in affirming such refusal is complained of in the first assignment in this court.

This request assumes that there was no evidence of negligence on the part of the conductor of the first train sufficient to submit to the jury.   The trial court said as to this question: "The particular negligence charged against the railroad com-

pany is that the conductor of the first train, the one upon which the plaintiff was employed as a brakeman, when he brought his train to a stop at Clyde station, neglected his duty by failing to place a flagman a sufficient distance back on the track to warn the following train, which is called the second train in this complaint, of the danger of coming too close to that station while the first train was stopped there." The Circuit Court of Appeals made no observation on this part of the case. Both the courts discuss the case chiefly upon the question of the liability of the company arising out of the negligence shown in the management of the second train.

The counsel for the defendant in error contends, in his brief, that the conductor of the first train was guilty of negligence in not obeying the following rules of the company, put in evidence by the plaintiff :

"RULE 133. When a train is stopped by an accident or obstruction, the rear brakeman must immediately go back with danger signals to stop any train moving in the same direction. At a point fifteen telegraph poles from the rear of his train he must place one torpedo on the rail ; he must then continue to go back at least thirty telegraph poles from the rear of his train and place two torpedoes on the rail, ten yards apart, when he may return to the point where first torpedo was placed, and he must remain there until recalled by the whistle of his engine ; but if a passenger train is due within ten minutes he must remain until it arrives. When he comes in he will remove the torpedo nearest the train, but the two torpedoes must be left on the rail as a caution signal to any following train. If it becomes necessary to protect the front of the train, the front brakeman must go forward and use the same precautions. In case of necessity the fireman will be required to act as flagman.

"RULE 134. When a flagman is sent out to signal any approaching train, he must, if possible, avoid stopping on a curve, or behind any obstruction, endeavoring to pass beyond the same, should such exist, and reach a position where he can be clearly seen from the approaching train, for at least

one fourth of a mile. The conductor must know that his train is fully protected in both directions, and he will be held responsible if any accident occurs from want of any precaution which could have been taken."

" Rule 156. When any section of a train is unable to make the specified time, the conductor will drop a man with danger signals to warn the following train. It is the duty of the conductor of every train, when the train stops for any cause, to immediately protect the rear end of his train as per Rule 133. No understanding with the conductor of the following train will relieve from this duty."

It is difficult to perceive that these rules had any applicability to a case like the present. They seem plainly intended to meet the exigency of a train stopped by an accident or obstruction, or unexpectedly compelled to stop between stations. It can scarcely be supposed that their directions are to be followed every time a train stops at a station.

Moreover, in the present case, it appears, from the testimony of the plaintiff's witnesses that no time was afforded for the use of such precautions. The second train was following so closely that the collision took place almost at the instant the first train had come to a stop, and before the rear brakeman could do more than to signal with his lantern and to call out. The conductor of the first train is not shown to have had any reason to suppose that the second train would run into him when stopping at a station, in utter disregard of the company's rules.

We are inclined to think that, if the plaintiff's case depended wholly on his being able to convict the conductor of the first train of negligence, there was not sufficient evidence adduced at this trial to have justified the trial judge in submitting the case to the jury on that issue.

It is, however, further contended on behalf of the defendant in error, and upon this the stress of the case is mainly put, that, under the facts disclosed in the record, the trial court was justified in submitting to the jury and the jury in finding that the defendant company was liable for the results of the negligence in the management of the second train.

There is no effort to call into question the numerous decisions of this court, whereby it has been firmly established that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow-servants in the course of the employment. Indeed, it is conceded in both the opinion of the Circuit Court of Appeals, *Northern Pacific Railroad* v. *Poirier*, 29 U. S. App. 583, and in the brief of the defendant in error that the conductor of the second train was a fellow-servant with the plaintiff, and that if the collision was caused solely by his negligence the defendant would not be liable.

The argument to maintain the liability of the defendant company, notwithstanding this concession, is based upon the evidence that tended to show that the second train was a "wild train," running on telegraphic orders, without any schedule or time table, and that the conductor of that train was not notified that the first train would stop at Clyde Spur.

One of the plaintiff's witnesses, Allen, the rear brakeman on the first train, testified that the second train was "running by telegraphic orders and had no schedule orders or time card." This was doubtless true, as it is true of every "wild" or extra train ; but such a fact by no means warrants the inference drawn by the trial court and given in the charge to the jury that "the train was running under special orders as to the time it was to make, where it was to go and when it should reach the different stations." It cannot be justly inferred from the mere fact that the second train was a "wild train" that its conductor was relieved from obeying the laws of the company. Among those rules, put in evidence by the defendant company, is :

"RULE 120. A train must not leave a station to follow a passenger train until five minutes after the departure of such passenger train, unless some form of block signal is used. In mountain districts they will not follow first-class trains descending, under any circumstances, until such trains are duly reported at next telegraph station. Freight trains must not follow each other descending mountain grades. They may ascend in sections when handled with mountain power in the

rear.   Descending passenger trains may follow freight trains as per Rule 121.   Ascending passenger trains will not leave station at foot of mountain until track is known to be clear."

"RULE 122.  Freight trains following each other must keep not less than ten minutes apart (except in closing up at stations or at meeting or passing points), unless some form of block signal is used."

Assuredly more evidence must be given than the mere fact that the second train was a "wild" train, not running on schedule time, to justify an inference, by either court or jury, that the conductor was relieved by such fact from regarding the rules of the company regulating the running of its train. Nor does the statement of the conductor of the second train, that he had not been notified that the first train was to stop at Clyde Spur, show that he had any right to dispense with the rules.   While he did say that he had not been notified that the first train would stop at Clyde Spur, he does not say that he did not know of such intention.   At all events, it was clearly shown by the plaintiff's witnesses that the trains were in immediate proximity to each other at Vollmer, the last station before reaching Clyde Spur; that the second train followed the first so closely that the collision occurred almost immediately after the leading train had come to a stand; and that the rear brakeman, who saw the second train approaching before his own train had fully stopped, did not have time to warn his fellow-brakeman, nor himself get to the ground, before the collision took place.

These facts disclose a palpable disregard by the conductor and engineer in charge of the second train of ordinary prudence and of the rules which it was their duty to observe. We see no ground for the assertion that their conduct was directed or controlled, in these particulars, by orders from some agent or dispatcher of the defendant company, "clothed with the duty of sending out the second train and having the control, management and direction of its movements."   Such conjectures did not constitute evidence to be submitted to the jury.

Accordingly we think that the defendant was entitled to

have had the following instructions given to the jury: "If the jury find from the evidence in this case that the accident which caused the plaintiff's injury was caused by the negligence of the conductor or engineer of the extra train, in following the first train too closely, or by running down the grade at too high a rate of speed, or in not keeping the extra train in proper control, or by any other act or neglect of the conductor or engineer of the first train, then I instruct you that the defendants are not liable, and that you shall return a verdict for the defendants." But this prayer was refused.

So, too, we think the following instruction asked for should have been given: "In determining the question of whether the defendant the Northern Pacific Railroad Company was guilty of negligence in the management of their trains, or either of them, the jury are instructed that they may consider the rules of the company, which have been read in evidence, and that if it appears therefrom that the running and conduct of this second train was provided for, and that the accident was caused by the engineer or conductor of the second train in disregarding such rules, then your verdict must be for the defendants." This instruction was modified by the court adding the following words: "Unless it appeared that the conductor of the train, or some one under whose orders he was acting, had authority in the special case to deviate from the rules." This modification was not warranted by any evidence disclosed in this record. The only orders shown, controlling the conductor and engineer in the management of the second train, were those contained in the rules of the company. As we have already said, to instruct the jury that they might infer, from the mere fact that the second train was a "wild" train, not running by schedule time, that some one in authority had dispensed with the rules in this special case, was to submit mere matter of conjecture as evidence on which they might base a verdict.

The same error vitiates portions of the general charge, which were duly excepted to and assigned for error; but we do not deem it necessary to discuss those assignments in detail. They are disposed of by the observations already made.

Upon the whole, we are of opinion that, giving to the plaintiff's evidence its utmost effect, it did not make a case which should have been submitted to the jury.

*The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is likewise reversed, and the cause is remanded to that court with directions to set aside the verdict and award a new trial.*