WEEKS v. SCHARER.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1901.)

No. 1,536.

1. INJURY TO EMPLOYE—NEGLIGENCE OF MASTER—COMPETENCE OF SERVANTS.
It is the positive duty of the master, which he may not delegate so as to relieve himself from a failure to discharge it, to use reasonable care to place fit and competent persons in charge of his work.

2. SAME—NEGLIGENCE OF FELLOW SERVANTS.
One who enters the employment of another thereby assumes the risk of the negligence of his fellow servants in the performance of all acts which they do while they are not discharging a positive duty of the master.[1]

3. SAME—WHO ARE FELLOW SERVANTS.
All who enter the employment of a common master to accomplish a common undertaking are prima facie fellow servants, although their grades of service are different, and some direct and supervise the men subject to their command and their work, while others perform the labor. The subordinates assume the risk of the negligence of their superiors in their work of supervision to the same extent as that of those who work by their sides.[2]

4. SAME—RISK OF INCOMPETENCE OF FELLOWS KNOWN TO THEM.
It is the duty of a servant to report to his master, or to those whom the master empowers to hire and discharge his workmen, the dangerous incompetence of his fellows known to him, and notice of such incompetence and a failure to report it entails upon him an assumption of its risk.

5. SAME—INCOMPETENCE OF SERVANT—NOTICE TO SHIFT BOSS NO NOTICE TO MASTER.
A shift boss in charge of a gang of men, whose duty it is to direct the men when, where, and how to work, to supervise them and their labor, and to see that they properly perform it, but who has no authority to hire or to discharge employés, is a fellow servant of the men in his shift, the risk of whose negligence they assume, and notice to him of the incompetence of a fellow servant is not notice thereof to the master.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Charles F. Scharer and Albert Murcrey were fellow servants of H. T. Weeks at work in his mine in Colorado, when Murcrey carelessly dropped

---

[1] Assumption of risk incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

[2] Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

a jack screw down the shaft, and it broke Scharer's leg. Scharer sued his employer, and alleged that the injury was caused by his failure to adopt reasonable rules for the operation of the mine, and by his failure to employ and retain competent workmen. The averments of the plaintiff were denied by the defendant. Upon the second issue, which is the only one that it is necessary to consider, in view of the conclusion which has been reached, the evidence was that the defendant, Weeks, was the owner of the mine; that one Jenkins was his superintendent, and had and exercised authority to hire and discharge his employés; that among these employés were two shift bosses, who supervised and directed the work of the men under the orders of the superintendent; that the superintendent was the head man, and was generally present at the mine, overseeing the work; that Scharer and Murcrey were members of and had worked in a shift together for about six weeks before the accident; that Murcrey had at one time turned on the air improperly, and had thereby caused a hose to cut one of the workmen on the head; that at another time he threw a block and tackle upon another workman; that he was careless in this way; that, if he threw anything down, he was as likely to throw it on his partner as to throw it to one side; that his partner, one Medaris, who had worked by his side for about 10 weeks before the accident, told his shift boss on February 10 or February 12, 1899, that he could not make him hear; that he had turned the air on at an improper time, and had hurt him,—and asked that he might be changed to another shift, so that he should not work with him. But no change was made, and Medaris worked on by the side of Murcrey until March 20, 1899, when the plaintiff, Scharer, was injured. There was no evidence that this shift boss had any authority to employ or to discharge men for the defendant. Upon this evidence the court charged the jury that notice to this shift boss of the incompetence of Murcrey was notice to the defendant, if the shift boss was charged with the duty of supervising the work of Murcrey, and this instruction is assigned as error. There were a verdict and a judgment for the plaintiff for $8,000 damages, which this writ of error challenges.

William J. Miles, for plaintiff in error.

H. N. Hawkins (T. M. Patterson and E. F. Richardson, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The evidence discloses no authority in the shift boss to hire or to discharge men for the defendant. His power was limited to supervising the work of the employés intrusted to his care, and to directing them when, where, and how to do their work. There was no evidence of any negligence in the selection or employment of the workman whose carelessness caused the injury. Was notice to the shift boss of the incompetence of this servant notice to his master? Counsel for the plaintiff contend that this question was properly answered in the affirmative by the court below, and cite in support of their position the following authorities: Railroad Co. v. McDaniels, 107 U. S. 454, 459, 2 Sup. Ct. 932, 27 L. Ed. 605; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Railroad Co. v. Henthorne, 73 Fed. 634, 638, 19 C. C. A. 623, 627, 43 U. S. App. 113, 122; Laning v. Railroad Co., 49 N. Y. 521, 534, 10 Am. Rep. 417; Railway Co. v. Collarn, 73 Ind. 261, 272, 38 Am. Rep. 134; Coppins v. Railroad Co., 122 N. Y. 557, 565, 25 N. E. 915, 19 Am. St. Rep. 523; Railroad Co. v. Nuck-

ol's Adm'r, 91 Va. 193, 195, 208, 21 S. E. 342; 1 Shear. & R. Neg. § 192; Gilman v. Railroad Co., 13 Allen, 433, 90 Am. Dec. 210; Shanny v. Androscoggin Mills, 66 Me. 420; Holland v. Railroad Co., 91 Ala. 444, 451, 8 South. 524, 12 L. R. A. 232; Railway Co. v. Patton (Tex. Sup.) 9 S. W. 175; Railroad Co. v. Gilbert, 46 Mich. 176, 180, 9 N. W. 243; Whittaker v. Canal Co., 126 N. Y. 544, 550, 27 N. E. 1042. The decisions in these cases declare that the duty of using ordinary care to provide competent servants is a positive duty of the master, which he cannot so delegate as to relieve himself from liability to discharge it; that officers and agents of a master who are empowered to hire, discharge, or suspend employés are authorized to discharge this positive duty; that notice to them of the incompetence of a servant is notice to the master; and that the jury may infer from notorious, long-continued, and habitual acts of recklessness that such officers or agents and the master knew, or by the exercise of ordinary care would have known, that the servant guilty of them was not competent. But there is nothing in any of these opinions to the effect that notice of the incompetence or of the habitual negligence of a servant to one charged with the duty of directing and supervising him and his work, but who is without authority to hire, discharge, or suspend such workman, is notice to the master, or to the effect that such a superior or supervising employé is discharging the positive duty of the master in this regard. In Railroad Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605, no question of notice to those supervising the work of an employé was in any way involved, and all that is said upon this subject is obiter dictum. The only issue there was whether or not the chief train dispatcher, who employed the reckless servant, exercised reasonable care in the act of selecting and hiring him. In Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, the charge against the company was not the employment of an incompetent servant, but the negligence of a superior servant in the discharge of his duty of operating an engine. On the other hand, the charge of the trial court in the case upon which counsel seem to place their chief reliance (Railroad Co. v. Henthorne, 73 Fed. 634, 639, 19 C. C. A. 623, 628, 43 U. S. App. 113, 123) was that "it was necessary for the plaintiff to show that the incompetency of Harrison, the engineer, was known, or ought to have been known, to those officers of the company who were given authority to employ, discharge, or suspend him, in order to charge the company with the same knowledge"; and the only question in that case was whether or not the power to suspend for incompetence vested an agent of the company with authority to receive notice of his shortcomings for his master. The opinion and the argument in the Henthorne Case concede that notice of incompetence to one who has no authority to hire, discharge, or suspend employés is not notice to the master. In Coppins v. Railroad Co., 122 N. Y. 557, 565, 25 N. E. 915, 19 Am. St. Rep. 523, the verdict against the company was sustained on the express ground that there was evidence from which the jury might have lawfully inferred that the division super-

intendent, who had authority to hire and discharge servants, had actual knowledge of the habitual incompetence of the employé whose negligence caused the accident. In Railroad Co. v. Nuckol's Adm'r, 91 Va. 193, 21 S. E. 342, there was no question of negligence of the defendant in the employment of its servants, and the judgment below was reversed because the court had refused to charge that an engineer of a locomotive and a track repairer were fellow servants. In Laning v. Railroad Co., 49 N. Y. 521, 534, 10 Am. Rep. 417, the foreman, who was authorized to hire and discharge employés, was aware of the incompetence of the workman whose negligence caused the injury. Nor is there anything in the other authorities cited by counsel for the defendant in error but statements of general and conceded rules of law, nor anything in conflict with the position that no agent or employé is competent to receive notice of the shortcomings of a servant which will charge his principal or master with liability unless he is authorized to hire, to discharge, or to suspend the employé,—unless he is delegated by the grant of that power to discharge this positive duty of the master,—while this position is sustained by many respectable decisions. Railroad Co. v. Baugh, 149 U. S. 369, 387, 13 Sup Ct. 914, 37 L. Ed. 772; Reiser v. Pennsylvania Co. (Pa. Sup.) 25 Atl. 175, 34 Am. St. Rep. 620; Smith v. Railroad Co. (Mo.) 52 S. W. 378, 383, 48 L. R. A. 368; Railroad Co. v. Eckols (Tex. Civ. App.) 26 S. W. 1117; Railway Co. v. Benford (Tex. Sup.) 15 S. W. 561, 563, 23 Am. St. Rep. 377.

The nature and the limits of the liability of the master for the incompetence of his servants is stated by Mr. Justice Brewer, in the latest decision of the supreme court upon that question which has been called to our attention, in these words:

"It may be asked, is not the duty of seeing that competent and fit persons are in charge of any particular work as positive as that of providing safe places and machinery? Undoubtedly it is, and requires the same vigilance in its discharge. But the latter duty is discharged when reasonable care has been taken in providing such safe place and machinery, and so the former is as fully discharged when reasonable precautions have been taken to place fit and competent persons in charge." Railroad Co. v. Baugh, 149 U. S. 387, 13 Sup. Ct. 921, 37 L. Ed. 781.

In Reiser v. Pennsylvania Co. (Pa.) 25 Atl. 175, 34 Am. St. Rep. 620, the chief train dispatcher of the railroad company was aware of the incompetence of one Crossman, a local operator working under his supervision and direction, but he had no power to hire or to discharge employés for the company; and the claim was that notice to him was notice to the corporation. The supreme court of Pennsylvania overruled this contention, and said:

"This might be so if he was clothed with the power of employing and discharging such servants. But he was not charged by the company with its duty in reference to the selection and retention of its employés."

In Smith v. Railroad Co., 52 S. W. 378, 383, 48 L. R. A. 368,— a case which was decided in 1899 by the supreme court of Missouri, —the head master of a roundhouse of a railway company was charged with notice of the habitual negligence of an engine wiper who

caused the accident. This head master had the supervision and direction of this wiper, of his co-workmen about the roundhouse, and of their work, but he had no authority to hire or to discharge them. The court held that notice to him was not notice to the corporation of the incompetence of the men subject to his command. In Railroad Co. v. Eckels, 26 S. W. 1117, 1118, the court of civil appeals of Texas held that a foreman who had the supervision and direction of men and of work, but who had no power to hire and to discharge employés, was not authorized to receive complaints or to make promises for the master relative to the incompetence of the servants under him, and that the employer was not charged or bound thereby.

The rule announced and illustrated in these decisions furnishes the only line of demarkation between the duty and liability of the master and the duty and liability of the servants in such situations. It is the master's duty to use reasonable care to provide competent servants. Servants assume the risk of the negligence of their co-workmen. Their interest prompts them and their duty calls them to report the known incompetence of their fellows. This interest and duty rest alike upon the superior servants—those who supervise and direct the work—and their subordinates, for they are all alike fellow servants. Strike down the rule which charges the master with and limits his knowledge to the knowledge of those whom he has empowered to discharge his duty of employing and discharging, and no guide or measure of the respective liabilities of master and servant remains, and they are left to the varying opinions of judges and juries, without compass to direct or principle to control them. Nor is this rule inconsistent with the general principles of the law of negligence. On the other hand, it is a necessary corollary of the established rules of that branch of the law. One who enters the service of another assumes all the ordinary risks and dangers of that service. One of these risks is the danger of injury from the negligence of his fellow servants. His association with his co-workmen is necessarily closer, his knowledge of their character, habits, and competence more intimate and more exact, than that of the master can be. As he has a better knowledge of their character and of their negligence, he is better able to protect himself against it than his master can be, and for this reason the law charges him with its risk. All who enter the employment of a common master to accomplish a common undertaking are prima facie fellow servants, and each assumes the risk of the other's negligence. The duties of co-workmen engaged in a common undertaking are necessarily diverse, and their grades of service different. On some is imposed the duty of superintending the work, and directing their associates when, where, and how to do it, while it falls to the lot of others to obey the directions of their superiors and to perform the labor. But this difference of duties and of grades of service neither abrogates nor affects the relation of fellow servants. The foreman, the boss, or the superintendent of a gang of men is a fellow servant of those under him to the same extent that they are co-workmen of each other. Each one of the subordinates assumes the risk of the negligence of

his superior in the discharge of his duty of supervision and direction to the same extent that he assumes the danger of the carelessness of the servant who works by his side. To this general rule there is this exception: A servant is not, and a master is, liable for the negligence of a fellow servant while he is engaged in discharging the personal duty of the master to use ordinary care to provide a reasonably safe place, reasonably safe tools and appliances, and reasonably competent servants. An employé frequently acts in a dual capacity,—at times a fellow servant, at times a vice principal,—and the line of demarkation between the negligence whose risk the servant assumes and that for which the master is liable is this: If the act is done in the discharge of a positive duty of the master, then negligence therein is the negligence of the latter. If it is done in the discharge of any other duty of the employé, it is the negligence of the servant, the risk of which his fellows have assumed.

Some of the rules which we have thus briefly restated have been the subjects of volumes of debates and conflicting decisions, but they have at last become established beyond doubt or cavil by the re-peated decisions of the highest court in the land. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Railroad Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; Rail-road Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Railroad Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 843, 40 L. Ed. 999; Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; City of Minneapolis v. Lundin, 58 Fed. 525, 527, 7 C. C. A. 344, 346, 19 U. S. App. 245, 249; Coal Co. v. Johnson, 56 Fed. 810, 6 C. C. A. 148, 12 U. S. App. 490; Railway Co. v. Waters, 70 Fed. 28, 16 C. C. A. 609, 36 U. S. App. 31; Balch v. Haas, 73 Fed. 974, 979, 20 C. C. A. 151, 156, 36 U. S. App. 693, 700; Bridge Co. v. Olsen (C. C. A.) 108 Fed. 335, 337; Railway Co. v. Elliott, 102 Fed. 96, 111, 42 C. C. A. 188; Millsaps v. Railway Co., 69 Miss. 423, 13 South. 837; Railroad Co. v. Hoover, 79 Md. 253, 29 Atl. 994, 25 L. R. A. 710, 47 Am. St. Rep. 392; Blessing v. Railway Co., 77 Mo. 410; 2 Bailey, Pers. Inj. §§ 2061, 2190; Railroad Co. v. Poirier, 167 U. S. 48, 17 Sup. Ct. 741, 42 L. Ed. 72; Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 345, 41 L. Ed. 746; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; Farwell v. Railroad Co., 4 Metc. (Mass.) 49, 38 Am. Dec. 339; Holden v. Railroad Co., 129 Mass. 268; Clifford v. Railroad, 141 Mass. 564, 6 N. E. 751; Sherman v. Railroad Co., 17 N. Y. 153; Besel v. Railroad Co., 70 N. Y. 173; De Forest v. Jewett, 88 N. Y. 264; Weger v. Railroad Co., 55 Pa. 460; Coal Co. v. Jones, 86 Pa. 432.

It is an indisputable deduction from these rules that a superior servant charged with the duty of supervising the men under him and their work, but unauthorized to hire or to discharge them, is perform-ing the duty of a fellow servant, and not that of a master. His acts, his knowledge, and his negligence are those of the servant, and not of the employer. If through his culpable carelessness the incom-petence of a servant is not reported to the superintendent, who has

the power to discharge him, that carelessness is the negligence of a fellow servant, the risk of which each of his subordinates has assumed to the same extent that he has assumed the danger from the negligence of his co-workmen in the same grade with himself. Indeed, the duty of reporting the known incompetence of fellow workmen to those who have power to discharge them rests upon those who work by their sides as heavily as it does upon those who supervise their work.

Much has been said in argument about the duty of the master to inspect his workmen, and to keep informed respecting their competence after they have been employed; and the assumption is indulged that every one who is empowered to supervise their work is authorized to make this inspection, and to receive notice of their competence which would charge the employer. The assumption is unwarranted, and the argument loses sight of the fundamental principles of the law of negligence. The liability of the master here rests upon and is measured by the law of agency and of negligence. The agent or officer whom the employer appoints to select, discharge, or suspend the servants in his service, and that agent alone, may charge his master by his acts or by his knowledge of their character. Those whom he employs for other purposes have no authority to select or discharge their fellows, and hence their knowledge and their negligence regarding the competence of their co-workmen in no way charge their employer.

The presumption of law always is that the master has discharged his duty, and has employed fit and competent servants. That presumption, unlike the presumption that he has furnished reasonably safe machinery, increases in strength with the lapse of time, because workmen grow more skillful and competent, while machinery deteriorates by use. The duty of the master is discharged when he has taken reasonable precautions to place fit and competent servants in charge of the work. One who would charge the master with negligence here must therefore prove not only that the servant was incompetent, but that the master knew, or by the exercise of ordinary diligence would have known, of his unfitness. The servant, not the master, assumes the risk of the negligence of those who work with him. He is in constant and close association with his co-workmen, and it is his duty to report to the agent whom the master has appointed to hire and discharge them any incompetence of which he learns. The employé who knows, or by the exercise of reasonable diligence would have known, of the recklessness and incompetence of his fellow servant, and who still neglects to report his shortcomings to the proper superior, assumes the risk of that negligence and incompetence. Railway Co. v. Peavey, 34 Kan. 472, 479, 8 Pac. 780; Brick Co. v. Kenyon, 57 Ill. App. 640, 646; Mining Co. v. McIver, 5 Colo. App. 267, 280, 38 Pac. 596; McCharles v. Smelting Co., 10 Utah, 470, 37 Pac. 733; Davis v. Railroad Co., 20 Mich. 105, 4 Am. Rep. 364; Railroad Co. v. Geary, 110 Ill. 383. These principles of law are indisputable. In view of them it is difficult to perceive how notice of the habitual recklessness of a fellow servant can be successfully

charged upon a master whose agents to provide servants had no actual knowledge of it, without also charging those who have worked in the same gang with him for weeks, and who assumed the risk of his negligence when they were employed, but who have never reported it, with a knowledge of it fatal to their recovery on its account. In the case in hand the shift boss and the members of the shift to which the plaintiff belonged, who knew of the acts of negligence of Murcrey, were fellow servants of the plaintiff. If those acts were of such a character that it was their duty to report them to the superintendent, the risk of their negligence in failing to report was necessarily assumed by the plaintiff. Notice of these acts to the shift boss was notice to a fellow servant, and not to the master, and the charge of the court to the contrary was fatal to this verdict.

The judgment below is reversed, and the case is remanded to the court below for another trial.

THAYER, Circuit Judge, and ADAMS, District Judge. We concur in the reversal of the judgment in this case on the ground stated in the foregoing opinion,—that the instruction given by the trial court that notice to the shift boss of Murcrey's incompetency or careless habits was notice to the defendant was an erroneous instruction, because there is no evidence in the record tending to show or warranting the inference that the shift boss either had power to hire or discharge the incompetent employé or any other employés. There are some other general propositions of law stated in the opinion concerning which we would not be understood as expressing any opinion.