## UNITED ZINC COMPANIES v. WRIGHT.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1907.)

### No. 2,437.

1. MASTER AND SERVANT—FELLOW SERVANTS—FOREMAN IN MINE.

A ground foreman in mining operations conducted under a general superintendent or manager is a fellow servant with the gang of miners whose work he directs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 491.]

2. SAME—INJURY TO SERVANT—ASSUMED RISK.

A drillman in a mine where it was the usual known custom to move the drills by hand up stopes having a practicable grade assumed the risk of injury from such manner of doing the work, and cannot recover from the owner for an injury so received, and he was not relieved from such assumption by a complaint made to the ground foreman of such method and a promise on his part to secure appliances, where he had no authority to do so, either actual or apparent, and whose only duty was to report the complaint to the superintendent, under whose direction all the work was conducted, which he failed to do.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 639, 640.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Southwestern Division of the District of Missouri.

Edward J. White (Arthur E. Spencer, on the brief), for plaintiff in error.

McPherson & Hilpirt and E. O. Brown, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. Wright sued his employer, the zinc company, for damages alleged to have been occasioned by its failure to furnish proper appliances with which to do the work assigned him. Defendant was engaged in lead and zinc mining, and plaintiff, who was an experienced miner, familiar with the operation of the drilling machine commonly used in lead and zinc mining, was employed by defendant as head drillman to take charge of the drilling operations in its mines. He had three helpers. At the time of his injury, he was engaged in moving the drilling machine weighing about 300 pounds up an inclined stope in the defendant's mine. The stope rose at an angle of about 45 degrees. Prior to the time of his injury, when the stope was so steep that miners could not walk up conveniently, defendant had employed a pulley and rope to haul up the machine; but this appliance had been abandoned after the stope became easier. The drillman and his helpers had been for some time, two or three weeks before the time of his injury, carrying the drill up the stope by hand. The evidence tends to show that this method was commonly resorted to in that region when the stopes were not so steep that a man could not walk up and down them. It required the men to lift and move the drill by main force, and, of course, was not so easy as raising it by a pulley; but, when the distance was short and the grade practicable, it was obviously a quicker and more feasible method than stopping to adjust and operate a pulley. When the plaintiff and his three helpers were carrying up the drill on February 14, 1905, he claims that some helper slipped and allowed the weight of the machine to sag back against him, and that the sudden strain injured his back. His counsel recognize that, by entering and remaining in the service of the defendant with full knowledge of its methods of doing business, Wright assumed the usual and ordinary risks of the employment, but place their reliance for recovery of damages upon a complaint alleged to have been made by him that the method of carrying the drill up the stope by hand

was dangerous and securing from the defendant a promise of reparation. He claims that, while waiting a reasonable time for the fulfillment of that promise, he was relieved from the assumption of the risk of remaining in the obviously dangerous service. This will be conceded. Crookston Lumber Co. v. Boutin, 149 Fed. 680, 79 C. C. A. 368, and cases cited. But do the facts support the plaintiff's hypothesis? We think not. It is earnestly contended by defendant that the service in which plaintiff was engaged was simple manual labor like that involved in Gowen v. Harley, 56 Fed. 973, 6 C. C. A. 190, and that the doctrine of relief from assumption of ordinary risks of service by a complaint of danger and promise of reparation has, on the authority of that case, no application. The difference in the pleadings and conceded facts of the two cases renders the doctrine of that case of uncertain application to this, and, by reason of the view we take of another question, we find it unnecessary to attempt to distinguish or assimilate the two cases.

Defendant throughout the trial contended that Bruce, to whom plaintiff made the complaint and from whom it is claimed promise of reparation was received, was a fellow servant of plaintiff, and that, on familiar principles, his negligence, if any, in failing to secure better facilities for plaintiff to work with was imputable to plaintiff, and created no liability against the defendant. The evidence conclusively shows that Bruce was ground foreman in charge of men performing mining operations for defendant, and that there was a general superintendent who represented the master and who had general supervision over all work above and below the surface of the ground to whom the ground foreman reported and from whom he took directions. The duties and representative capacity of a ground foreman in mining operations conducted under the supervision of a general superintendent or manager have been frequently considered by the courts, and in a general sense the rule is firmly fixed that he is a fellow servant with the gang of miners whose operations he is directing. Alaska Mining Co. v. Whelan, 168 U. S. 86, 88, 18 Sup. Ct. 40, 42 L. Ed. 390, and cases cited. Weeks v. Scharer, 111 Fed. 330, 334, 49 C. C. A. 372; Id., 129 Fed. 333, 64 C. C. A. 11; Davis v. Trade Dollar Consol. Min. Co., 117 Fed. 122, 54 C. C. A. 636.

But it is contended that Bruce, the ground foreman, had exceptional powers, and so stood for the master in his relation to the miners, that complaint made to him of inadequate and dangerous working appliances was a complaint to the master, and his promise of reparation the promise of the master. In other words, that he was in this particular a vice principal. The answer to this contention requires consideration of the proof. The evidence conclusively shows that the duties of Bruce as ground foreman were to direct the miners where to set up the drill, direct the shovelers where to shovel, direct the location of the underground tracks, and look after everything underground, and that it was a common practice for him at times to help the workmen who were laboring under him in the actual drilling of holes, laying of tracks, and other such work. He was subject to the general orders of the superintendent. He hired men to work in his department and discharged them but the superintendent always paid

them their wages. It was the foreman's duty to report to the superintendent when any new or different appliances or tools we're needed, and it was the duty of the superintendent to supply them. He made no report of Wright's complaint to the superintendent, and, of course, the latter took no action thereon.

From the foregoing undisputed facts or from the evidence taken as a whole, all of which has been critically examined, it cannot be claimed that the ground foreman had any right or power to supply any desired working appliance. Neither can it be claimed that Wright, the plaintiff, had any reason to believe he had such right or power. The most that can be claimed is that it was the ground foreman's duty, if Wright or any other workman under him complained about appliances, to report such complaint to the superintendent for his action, and depend upon his judgment whether any appliances should be supplied, and, if so, when and under what conditions. As the foreman had no right or ability to supply the block and tackle in question, his promise to do so, if made, afforded no protection to Wright. His failure to repeat Wright's complaint to the superintendent was the real negligence, if any in the case, and that was a failure to perform one of the duties which devolved upon him as a servant and the risk of which was assumed by all the other servants.

The case is controlled by the principles announced in the Whelan and Scharer Cases, supra. Wright assumed the obvious danger and risk incident to carrying the drill machine up the stope as it had been done before, and he is not relieved of the consequences of that assumption by any promise imputable to the master. The Circuit Court erred in not giving the instruction requested by defendant's counsel that plaintiff could not recover.

The judgment must be reversed and the cause remanded for a new trial.